TJS:JAG
F.#2007R00092

**FILED**
IN CLERKS OFFICE
U.S. DISTRICT COURT E.D. N.Y.

★ AUG 1 5 2007 ★

P.M. _____
TIME A.M. _____

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - X

UNITED STATES OF AMERICA

    - against -

TIMOTHY DONAGHY,

       Defendant.

- - - - - - - - - - - - - - - - X

I N F O R M A T I O N

Cr. No. 07-587 (CBA)
(T. 18, U.S.C., §§ 371
981(a)(1)(C), 1349 and
3551 et seq.; T. 21,
U.S.C., § 853(p); T. 28,
U.S.C., § 2461(c))

THE UNITED STATES ATTORNEY CHARGES:

INTRODUCTION

     At all times relevant to this Information, unless otherwise indicated:

     1.  The National Basketball Association ("NBA"), which was founded in 1946 and has its headquarters in New York City, is a global sports and entertainment organization that includes, among other things, a men's professional basketball league of 30 teams located in major metropolitan areas throughout the United States and Canada.  The NBA team owners, management, and players operate under the terms and conditions set by their agreements with the NBA.

     2.  The NBA employs approximately 60 referees who officiate pre-season, regular season, and playoff games between NBA teams.  Each game has an officiating crew of three referees. NBA referees are subject to a collective bargaining agreement and

to rules of conduct set by the NBA.  Those rules of conduct
require that NBA referees conduct themselves according to the
highest standards of honesty, integrity, and professionalism, as
well as refrain from any conduct that might impair the faithful
and thorough discharge of their duties.

3.    NBA referees are also subject to several levels of
review.  For example, for each game, reports completed by the
crew chief, who is typically the senior member of the officiating
crew, are transmitted electronically to the NBA's Basketball
Operations Division.  NBA rules require game reports to be
"complete and accurate," and to reflect, among other things, any
referee misconduct.

4.    Among other things, NBA referees are prohibited
from having any involvement in sports betting or bookmaking.[1]  In
particular, NBA referees are prohibited from placing bets on NBA
games and from providing information to others for the purpose of
assisting them to place bets.

5.    As a matter of policy and practice, the NBA does
not disclose the identities of an officiating crew to the public,
or to NBA teams, until game time.  The NBA creates master referee
schedules setting forth the officiating crews for upcoming NBA
games.  These schedules are not disclosed to the public or to NBA

---

[1] The only exception to this rule is that NBA referees are
permitted during the NBA off-season to place bets on horse races
at racetracks, where legal.

2

teams.  NBA referees are prohibited from disclosing upcoming referee assignments and other proprietary NBA information.  Also, NBA referees are prohibited from engaging in other employment without permission of the NBA.

6.  During the NBA season, professional bookmakers predict the team favored to win each NBA game and set a point spread by which the favorite is expected to win.  This prediction is also referred to as the "betting line."  If a bettor selects the favored team, the bettor wins if that team wins the game by the predicted point spread or by a greater number of points.  If a bettor selects the team that is not favored, the bettor wins if that team wins the game or loses by a lesser number of points than the predicted point spread.

7.  For the past 13 years, up to and including the 2006-2007 NBA season, the defendant TIMOTHY DONAGHY was an NBA referee.  Approximately four years ago, DONAGHY began placing bets on NBA games, including games he officiated.  Beginning in approximately December 2006, DONAGHY began to receive cash payments in exchange for providing betting recommendations or "picks" on NBA games, including games he officiated, to individuals involved in the business of sports betting.

3

COUNT ONE
(Conspiracy to Commit Wire Fraud)

8.    The allegations of paragraphs one through seven are realleged and incorporated as if fully set forth in this paragraph.

9.    On or about and between December 1, 2006 and April 30, 2007, both dates being approximate and inclusive, within the Eastern District of New York and elsewhere, the defendant TIMOTHY DONAGHY, together with others, did knowingly and intentionally conspire to devise a scheme and artifice to defraud the NBA by depriving the NBA of the intangible right of honest services, and for the purpose of executing such scheme and artifice, transmitted and cause to be transmitted writings, signals and sounds by means of wire communication in interstate and foreign commerce, in violation of Title 18, United States Code, Sections 1343 and 1346.

10.    It was part of the conspiracy that as to certain NBA games, including games he officiated, DONAGHY provided a pick to his coconspirators as to which team should be bet.

11.    It was further part of the conspiracy that DONAGHY received payment from his coconspirators for each correct pick. DONAGHY was not paid for an incorrect pick.

4

12.   It was further part of the conspiracy that DONAGHY used a telephone to contact his coconspirators to provide his picks for certain NBA games.  Those communications were sometimes made in coded language.

13.   It was further part of the conspiracy that in determining his picks for certain NBA games, DONAGHY would rely on, among other things, nonpublic and other information to which he had unique access by virtue of his position as an NBA referee. This information included his knowledge of (a) the officiating crews for upcoming NBA games, (b) the interactions between certain referees and certain players and team personnel, and (c) the physical condition of certain players.  DONAGHY also compromised his objectivity as a referee because of his personal financial interest in the outcome of NBA games.  In addition, DONAGHY concealed this scheme from the NBA and other referees in order to prevent its detection.

(Title 18, United States Code, Sections 1349 and 3551 et seq.)

COUNT TWO
(Conspiracy to Transmit Wagering Information)

14.   On or about and between December 1, 2006 and April 30, 2007, both dates being approximate and inclusive, within the Eastern District of New York and elsewhere, the defendant TIMOTHY DONAGHY, together with others, being engaged in the business of betting and wagering, did knowingly and

intentionally conspire to use a wire communication facility, to wit: a telephone, for the transmission in interstate and foreign commerce of bets and wagers and information assisting in the placing of bets and wagers on sporting events and contests, in violation of Title 18, United States Code, Section 1084.

OVERT ACTS

15.  In furtherance of this conspiracy and in order to accomplish the objectives thereof, DONAGHY, together with others, committed and caused to be committed, among others, the following overt acts:

a.  On or about December 13, 2006, DONAGHY spoke with a coconspirator by telephone regarding his pick for an NBA game.

b.  On or about December 14, 2006, DONAGHY met with coconspirators in Pennsylvania and received a cash payment.

c.  On or about December 26, 2006, DONAGHY spoke with a coconspirator by telephone regarding his pick for an NBA game.

d.  On or about March 11, 2007, DONAGHY had a meeting with a coconspirator in Toronto, Canada, and received a cash payment.

(Title 18, United States Code, Sections 371 and 3551 et seq.)

## CRIMINAL FORFEITURE ALLEGATION

16.   The United States hereby gives notice to the defendant TIMOTHY DONAGHY that upon his conviction of Count One charged in this Information, the government will seek forfeiture in accordance with Title 18, United States Code, Section 981(a)(1)(C) and Title 28, United States Code, Section 2461(c), which require any person convicted of such offense to forfeit any property constituting or derived from proceeds obtained directly or indirectly as a result of such offense, including, but not limited to, the following:

### MONEY JUDGMENT

17.   A sum of money equal to thirty thousand dollars in United States currency ($30,000.00).

18.   If any of the above-described forfeitable property, as a result of any act or omission of the defendant:

a.   cannot be located upon the exercise of due diligence;

b.   has been transferred or sold to, or deposited with, a third party;

c.   has been placed beyond the jurisdiction of the court;

d.   has been substantially diminished in value; or

7

c.    has been commingled with other property which cannot be divided without difficulty;

it is the intent of the United States, pursuant to Title 21, United States Code, Section 853(p), as incorporated by Title 28, United States Code, Section 2461(c) to seek forfeiture of any other property of the defendant up to the value of the forfeitable property described in this forfeiture allegation.

(Title 28, United States Code, Section 2461(c); Title 18, United States Code, Section 981(a)(1)(C); Title 21, United States Code, Section 853(p))

s/ RRM
ROSLYNN R. MAUSKOPF
UNITED STATES ATTORNEY
EASTERN DISTRICT OF NEW YORK

8