```
1                    UNITED STATES DISTRICT COURT
                     EASTERN DISTRICT OF NEW YORK
2
   - - - - - - - - - - - - - - - X
3  UNITED STATES OF AMERICA,     :   07-CR-587(CBA)
                                  :
4                                 :
                                  :
5       -against-                 :   United States Courthouse
                                  :   Brooklyn, New York
6                                 :
                                  :
7                                 :
                                  :
   TIMOTHY DONAGHY,               :   July 2, 2008
8                                 :   11:00 a.m.
            Defendant.            :
9                                 :
   - - - - - - - - - - - - - - - X
10
   - - - - - - - - - - - - - - - X
11 UNITED STATES OF AMERICA,     :   08-CR-0086(CBA)
                                  :
12                                :
                                  :
13      -against-                 :   United States Courthouse
                                  :   Brooklyn, New York
14                                :
                                  :
15                                :
   JAMES BATTISTA and            :   July 9, 2008
16 THOMAS MARTINO,               :   9:30 a.m.
                                  :
17          Defendant.            :
   - - - - - - - - - - - - - - - X
18
          TRANSCRIPT OF CRIMINAL CAUSE FOR ORAL ARGUMENT
19         BEFORE THE HONORABLE CAROL BAGLEY AMON
                  UNITED STATES DISTRICT JUDGE
20
                     A P P E A R A N C E S:
21
   For the Government: BENTON J. CAMPBELL, ESQ.
22                     United States Attorney
                       Eastern District of New York
23                      271 Cadman Plaza East
                       Brooklyn, New York 11201
24                     BY: JEFFREY GOLDBERG, ESQ.
                           ALEXANDER A. SOLOMON, ESQ.
25                         Assistant United States Attorneys
```

```
1
   For the Defendant:     LAURO LAW FIRM
2                         Attorney for Defendant Donaghy
                             101 East Kennedy Boulevard
3                            Suite 3100
                             Tampa, Florida 33602
4                         BY: JOHN F. LAURO, ESQ.

5                         JACK McMAHON, ESQ.
                          Attorney for Defendant Battista
6                            1500 Walnut Street
                             Suite 1100
7                            Philadelphia, Pennsylvania 19102

8                         VICKI HERR, ESQ.
                          Attorney for Defendant Martino
9                            14 S. Orange Street
                             Media, Pennsylvania 19063
10
   Also Appearing:        Paul Shechtman, Esq.
11                        Appearing for the National Basketball
                          Association
12
                          Brandon Maxon, U.S. Probation Department
13

14

15
   Court Reporter:   Anthony D. Frisolone, CSR, RDR, FCRR, CRI
16                    Official Court Reporter
                      Telephone: (718) 613-2487
17                    Facsimile: (718) 613-2694
                      E-mail:    Anthony_Frisolone@nyed.uscourts.gov
18
   Proceedings recorded by computerized stenography.  Transcript
19 produced by Computer-aided Transcription.

20

21

22

23

24

25
```

Oral Argument                                           3

1           (In open court.)

2           (Defendants Donaghy and Martino are present in open

3    court; Defendant Battista is not present.)

4           (Mr. McMahon appears via telephone.)

5           (Judge CAROL BAGLEY AMON takes the bench.)

6           THE COURT:  Good morning.

7           MR. GOLDBERG:  Good morning.

8           MR. LAURO:  Good morning.

9           COURTROOM DEPUTY:  United States versus Donaghy,

10   Batista, and Martino.

11           Please state your appearances for the record.

12           MR. GOLDBERG:  Jeffrey Goldberg, Alexander Solomon

13   for the Government and Brandon Maxon from Probation.

14           MR. LAURO:  John Lauro on behalf of Mr. Donaghy who

15   is here in Court.

16           MS. HERR:  Vicki Herr here on behalf of Mr. Martino.

17           THE COURT:  Mr. McMahon is on the phone?

18           MR. MCMAHON:  Yes, I can hear you.

19           THE COURT:  Can you hear me?

20           MR. MCMAHON:  Yes, Your Honor.

21           MR. SHECHTMAN:  Paul Shechtman for the National

22   Basketball Association.

23           THE COURT:  I'm sorry, Mr. Shechtman.

24           Mr. McMahon, I understand that you need today

25   appear by phone this morning because you are currently on

Oral Argument                                              4

1    trial.

2              MR. MCMAHON:  Yes, Your Honor, I'm in the middle of

3    a homicide jury trial.  We're halfway through the Government's

4    case and we've been on it for a while, so, I'm here.  In fact,

5    I'm in the courtroom.

6              THE COURT:  I understand that your client is not

7    here.  I take it he waives his appearance for any argument

8    that we have today.

9              MR. MCMAHON:  Yes, Your Honor.

10             THE COURT:  The principal issue, as it pertains to

11   your client, that's outstanding, deals with the issue of

12   restitution.  I had directed last week that all of the papers

13   that were filed by the NBA be served on you.

14             MR. MCMAHON:  We received a package, I believe,

15   Wednesday or Thursday before the holiday last week.  A very

16   voluminous package, yes, we did.

17             THE COURT:  Have you had the opportunity to go

18   through it?  It was submitted last week.

19             MR. MCMAHON:  I reviewed some of it, I have been on

20   this murder trial.  I reviewed some of it, not all of it,

21   because it's very -- a lot.

22             THE COURT:  Well, Ms. Herr was able to respond today

23   and in a very comprehensive fashion to the material that was

24   submitted, and I take it you were not able to do that because

25   you were on trial.

1          MR. MCMAHON:  Like I said, I've been on a murder

2    trial since -- I was, you know, I've looked at it and I didn't

3    receive the Government's brief about restitution as in reply

4    to my guy until yesterday morning was when I received it and,

5    in fact, I didn't see it until 5 o'clock when I came back from

6    court.

7                It was apparently filed at 8:30 on Monday

8    night, somewhere around there.  I went right to court and I

9    received it last night at around, well, Tuesday night at

10   around 5:30 when I first saw the Government's 18-page document

11   which I thought was supposed to be filed last week.

12         THE COURT:  When can you respond to this, Counsel?

13   Could you respond to these submissions by Monday?

14         MR. MCMAHON:  Pardon me.

15         THE COURT:  Can you respond to these submissions by

16   Monday?

17         MR. MCMAHON:  Yes.  I mean, I can do it.  I'm

18   finishing this murder case and then I'm going away, but I can

19   get something done.  I can do it, Judge.

20         THE COURT:  If you're seeking an adjournment here,

21   if I grant you an adjournment, it's only going to be a short

22   one so I don't know.

23         MR. MCMAHON:  I don't want a short one.

24         THE COURT:  When were you talking about going away?

25         MR. MCMAHON:  I have a week's vacation leaving this

1   Saturday to Sunday, and then after that I can do it any day

2   that you wish.  The following week would be fine.

3          THE COURT:  There's one issue before I let you

4   resume your trial, and in order to clarify the briefing on

5   this issue, it's the Government's position in your letter that

6   this, Mr. Battista's crime, is covered by the Mandatory

7   Provisions of the Restitution Act.

8               Why is that?

9          MR. GOLDBERG:  It's covered by the MVRA because the

10  MVRA applies to any case where there is an identifiable victim

11  who has suffered a pecuniary harm.

12         THE COURT:  No, there is another requirement in

13  addition to that.  It has to be a crime of fraud or deceit.

14  That's "and," not "or."

15         MR. GOLDBERG:  We believe that the specific conduct

16  underlying the basis of conviction, the offense of conviction,

17  is all about fraud and deceit.  That's what this case is

18  about, that's what his conviction is about, and that is what

19  is specified in Count Two of the indictment.  If you consider

20  the paragraphs that were incorporated therein, the overt acts,

21  as well as his allocution.

22         THE COURT:  So, it's your position that this is

23  under §C1(a)(2), an offense committed by fraud or deceit.

24         MR. GOLDBERG:  Yes, Your Honor.

25         THE COURT:  Because in order to prove the count,

1   wagering, you don't have to prove any fraud or deceit.

2           MR. GOLDBERG:  That's true, but I believe that the

3   restitution statute is not construed that narrowly.

4           THE COURT:  Do you have any case law to support the

5   proposition that it's not the crime itself that's charged, but

6   it's the way it's committed.  Because the way I read your

7   papers, and maybe I didn't read them correctly, but I thought

8   you were simply relying on the identifiable victim because

9   that was cited and that's not enough.  I wasn't sure that you

10  were relying on the fraud or deceit.

11          MR. GOLDBERG:  Well, the case law, Your Honor, that

12  we've relied on is the whole line of Hughey and its progeny

13  which talks about the specific conduct that is the basis of

14  the offense of conviction.  And, I think it's consistent with

15  the goals of the MVRA.  I know one case, I don't know if we

16  cited it, I think it's called Brock Davis.

17          THE COURT:  Well, I don't know in your papers,

18  Mr. Goldberg, you relied on the fact or talked about the issue

19  of fraud or deceit in terms of this being an offense that

20  involved fraud or deceit, the wagering offense.

21          MR. GOLDBERG:  I think that's all part and parcel of

22  the offense as specified in the indictment, we put that in our

23  papers, and also based on his allocution.  I don't think you

24  can construe his offense of conviction as narrowly as

25  Mr. McMahon wants to, and so, that's why we've taken our

1    position.  To the extent that we didn't specifically identify

2    the fraud or deceit condition that's my error, but certainly

3    we believe it exists.

4              THE COURT:  Is the probation officer here on

5    Mr. Batista's case?

6              MR. GOLDBERG:  It's the same officer.

7              THE COURT:  There are different names on the report.

8              MR. MAXON:  Your Honor, I prepared the Offense

9    Conduct Reports for all three defendants.

10             THE COURT:  I think Mr. McMahon actually made an

11   objection to this and I didn't see a response.

12             MR. MAXON:  I actually became aware of the objection

13   letter yesterday.  I'm in the process of preparing a response.

14   With respect to restitution, Probation agrees with the

15   Government's position.

16             THE COURT:  Well, alternatively, it seems like to me

17   that an argument could be made that restitution would be

18   appropriate under §3663 which is not mandatory restitution,

19   but restitution under which the Court has to consider a number

20   of factors such as the financial ability to pay, et cetera.

21                  Does the Government take the alternative

22   position that it should be imposed under that section?

23             MR. GOLDBERG:  We do, Your Honor.

24             THE COURT:  All right, here's what I would like to

25   do in terms of the briefing on this.

1              Mr. McMahon, I'd like for you to address the

2    issues in your letter on the 14th.  Address whether it comes

3    under the Mandatory Provision as well as addressing whether

4    you believe it comes under the Permissive Provision.

5              MR. MCMAHON:  I understand.

6              THE COURT:  And I'd ask the Government on that same

7    date, the 14th, to indicate to the Court why it thinks it also

8    comes under the Permissive Provision.

9              MR. GOLDBERG:  Yes, Your Honor.

10             THE COURT:  And, additionally, if you have any case

11   law to support your proposition that this is the offense, does

12   not have to itself be fraud or deceit but one that just uses

13   fraud or deceit.  And also, Mr. McMahon, in that submission, I

14   want you to also address any issues that you may have with

15   respect to the extent of the NBA's submission the extent of

16   the restitution that Mr. Battista is being held responsible

17   for.  They're seeking to hold him responsible, the Government

18   is seeking.

19             MR. MCMAHON:  I will do that.

20             THE COURT:  I want a comprehensive submission from

21   you by the 14th.

22             MR. MCMAHON:  Yes, Your Honor.

23             THE COURT:  Any responses to that submission by the

24   NBA or the Government to be filed by the 18th, and also I

25   don't -- the briefing, as far as I'm concerned, with respect

1    to the issues of restitution, Mr. Lauro, Mr. Donaghy is over.

2    It's complete; I've seen everything that I've seen.  If you

3    believe that anything that Mr. Battista or Mr. Martino has

4    said impacts you, and you want to comment on that, you can

5    comment solely on those issues on the 18th.

6              MR. LAURO:  Yes, Your Honor.

7              THE COURT:  Do you understand?

8              I don't want any repetition, I certainly have

9    more than enough paper on the issue of restitution.  I don't

10   want anything further other than if you believe that

11   Mr. Martino or Mr. Battista say something regarding your

12   client that you don't think is supported you can comment on

13   that.  But, otherwise, I don't want any other submissions from

14   you.

15             So, I think that under all the circumstances,

16   it is probably preferable to have the issues of restitution

17   fully before the Court so that the issues can be resolved at

18   the sentencings of all of the defendants without having to

19   have any future proceedings in connection with this case.

20             So, that schedule would permit all of those

21   issues to be fully briefed by the 18th and what I would then

22   propose is to have the sentencings of Mr. Battista and

23   Mr. Martino go forward on the 24th of July at 9:30 and

24   Mr. Donaghy's sentencing go forward on the 29th of July at

25   11 a.m.

1              All right?  Mr. Battista, is there anything

2    else that we need to address with respect to your client?

3              Does the Government have something?

4              MR. GOLDBERG:  I do have one minor matter that I

5    would like to put on the record, one correction.

6              THE COURT:  Excuse me, I might have misspoken.

7              (Pause.)

8              THE COURT:  Mr. McMahon, I'm sorry.

9              MR. MCMAHON:  It's okay, I'm here.

10             THE COURT:  I'm sorry, you wanted to say something,

11   Mr. Goldberg, with respect to Mr. McMahon's client,

12   Mr. Battista.

13             MR. GOLDBERG:  Yes, Your Honor, it actually impacts

14   all three defendants.  Two minor corrections to our submission

15   from yesterday, I've informed counsel about them.

16             Number one, we correctly represented to the

17   Court during the July 2nd teleconference that the October,

18   2007 document subpoena related only to Mr. Donaghy.  That was

19   not reflected in my cost calculation in light of Fogel.

20             I indicated that those costs should be borne

21   by all three defendants, we disagree.  It comes out to about

22   $15,000, I can back up if I've lost you.

23             In October, 2007, the Government issued a

24   document subpoena to the NBA.

25             THE COURT:  Right.

1          MR. GOLDBERG:  The NBA attorneys incurred costs,

2    approximately $15,000, to respond to that subpoena.  You had

3    inquired with the Government on July 2nd as to whether, as to

4    who that applied to, that subpoena.  I indicated correctly

5    that it applied only to Mr. Donaghy and not to Battista and

6    Martino.

7              In my submission of yesterday, I did not break

8    out those costs and, so, they're currently listed, commingled,

9    if you will, with the costs we believe should be borne by all

10   three defendants, so we should break these out.  I haven't

11   done the accounting of the exact dollars, but Mr. Shechtman

12   informs me it's about $15,000.

13             Have I lost you?

14         THE COURT:  No, you haven't lost me, but I think you

15   need to put it into a letter with the requisite math.

16         MR. GOLDBERG:  Absolutely.

17         THE COURT:  Okay.

18         MR. GOLDBERG:  The second correction.  Ms. Herr is

19   right, I indicated that the status conference in the Battista

20   case was on March 10, 2008, it actually was April 10, 2008, so

21   it shortens the time period under _Fogel_ for costs to be

22   incurred by Battista and Martino.  It's only a difference of a

23   few thousand dollars.

24             By the same token Mr. Martino did plead guilty,

25   I believe, eight days before Mr. Battista, so there are some

1  minor costs that should be borne only by Mr. Battista.  We'll

2  break out the math, I just wanted to indicate those minor

3  corrections.

4           THE COURT:  You need to put all of those into a

5  letter today and serve it on both counsel.

6           MR. GOLDBERG:  Absolutely, we will do so.

7           THE COURT:  What I intend to do at this point,

8  Mr. McMahon, is to take up some of the issues that have been

9  raised regarding restitution by Mr. Lauro on behalf of

10 Mr. Donaghy.

11          MR. MCMAHON:  Okay.

12          THE COURT:  And also, I don't know if the Government

13 and the NBA, Mr. Shechtman, prepared a response to any of

14 Ms. Herr's submission.

15          MR. GOLDBERG:  I think the only issue -- I read it

16 this morning.  The only issue that I think she raises which is

17 out there, I think it's a minor one; I think Mr. Lauro also

18 raises the same issue, is whether the costs, the honest

19 services cost, for 2006-2007 should be, I think, $72,000 which

20 is what the NBA claims or roughly $45,000.  I think that goes

21 to fringe benefits and things like that.

22              The Government really doesn't have a position

23 on that, that's because, in the end, it's an estimate.  I

24 think there are arguments both ways, but I wanted to flag that

25 as something that Ms. Herr put in her submission.

1          THE COURT:  All right.  So, Mr. McMahon, do you want

2     to stay on the phone to listen to these arguments.

3          MR. MCMAHON:  That's okay, Your Honor, we're going

4     to start this case.  I will submit my submission by 7/14 and I

5     will get that to you probably by this Friday.

6          THE COURT:  All right.  So, you heard the other

7     dates?

8          MR. MCMAHON:  I heard that.  If Mr. Goldberg could

9     fax me that mathematical breakdown of his additional

10    corrections that would be fine.

11         THE COURT:  You heard the sentencing date?

12         MR. MCMAHON:  7/24 at 9:30.

13         THE COURT:  Right.

14         MR. MCMAHON:  I will be there.

15         THE COURT:  That's good news.  Okay.

16         MR. MCMAHON:  Thank you, Your Honor.

17         MR. GOLDBERG:  Your Honor?

18         THE COURT:  Yes.

19         MR. GOLDBERG:  I'm not sure what the Court has in

20    mind for an agenda going forward.  If it's at all possible to

21    resolve the Agent Scala issue, the Government would ask that

22    we talk about that first because in deference to Agent Scala,

23    who is retired.

24         THE COURT:  Is Agent Scala here?

25         MR. GOLDBERG:  He's in the building.

1          THE COURT:  All right.  He's in the building?

2          MR. GOLDBERG:  Yes.

3          THE COURT:  Okay.

4          MR. GOLDBERG:  And, you know, again, we urge the

5    Court to quash the subpoena and deny Mr. Lauro's request; and

6    we believe we've provided Your Honor with sufficient support

7    to do it.  There is absolutely no basis for the subpoena and,

8    if at all possible, we would like to discuss that before we

9    get into a long discussion of the remaining restitution

10   issues.

11          Thank you.

12          THE COURT:  Okay.  Mr. Lauro, I don't know what it

13   is you are envisioning here.  You indicate in your papers that

14   you don't wish to call Mr. Scala as a defense witness; that

15   you're somehow calling him for the Court's purposes.  I

16   haven't asked to have Mr. Scala here, and I'm not sure that I

17   understand what the issues are or where there's any

18   disagreement.

19          The Government filed a 5K letter which detailed

20   Mr. Donaghy's cooperation.  It indicated that he was

21   completely candid and truthful; indicated that he talked about

22   other issues without detailing them, those particular issues.

23          You filed letters yourself going into further

24   information that you say Mr. Donaghy provided.  The Government

25   hasn't taken issue with that information or the credibility of

1  that information.  I'm not sure that I understand what purpose

2  is served by Mr. Scala's testimony.  I mean, I don't think

3  there is any precedent for the fact that the Court should

4  entertain a full-blown discussion of other information whether

5  it could or couldn't have led to additional prosecutions.

6            The Government's letter, the cooperation

7  letter, says that, "It's understood" that a good-faith

8  determination by the Office as to whether defendants have

9  cooperated fully and provided substantial assistance or has

10 otherwise complied with the agreement"; and more pertinently,

11 "The Office's good-faith assessment of the value,

12 truthfulness, completeness, and accuracy is binding on the

13 defendant."  I just don't think there's an issue.

14            MR. LAURO:  I do, Your Honor.  May I be heard?

15            THE COURT:  Yes.

16            MR. LAURO:  Thank you.

17            Your Honor, first of all, the Court has

18 complete discretion to hear whatever information Your Honor

19 deems relevant to sentencing.

20            One of the most important factors, I believe,

21 in this case is the extent, the nature, and the significance

22 of Mr. Donaghy's cooperation.

23            The Court under U.S. v. Martinez and U.S. v.

24 Bruno, particularly after Booker, can hear a wide range of

25 information concerning a defendant's cooperation whether or

1    not it leads to prosecutable offenses.  The problem here,

2    however, is that the Government did not carry its

3    responsibility and its promise to us to provide Your Honor

4    with all of the information regarding Mr. Donaghy's

5    cooperation.

6              Instead, the Government carved out a

7    significant piece of what Mr. Donaghy provided and didn't tell

8    the Court.  And, as a result, we had to do that which is a

9    rather extraordinary proceeding, as I think the Government

10   recognized, by having defense counsel put in the position of

11   having to advise the Court about the full extent of somebody's

12   cooperation.

13             Mr. Donaghy provided crucial information with

14   respect to game manipulation by NBA referees.  The Government

15   doesn't contest that; the Government doesn't say it was

16   incorrect; the Government doesn't say that that was false.

17   However, the Government didn't even tell you about it, we have

18   to do that.

19             THE COURT:  I have the information before me now.

20   The Government in their letter, in great detail, set forth his

21   cooperation in connection with the case that they prosecuted

22   as a result of his cooperation.  They suggested he provided

23   other information.

24             It's not been my experience, Mr. Lauro, that

25   every cooperation letter regarding a cooperating defendant

1   goes into minute details about information provided that

2   doesn't ultimately result in another prosecution.

3             So, I just don't understand your position here,

4   but in any event, you have brought the information to the

5   Court's attention, it's before the Court.  I don't see the

6   need, and you indicated it's in my discretion, I don't see the

7   need for Mr. Scala's testimony.

8             MR. LAURO:  Well, Your Honor, under 5K and the

9   commentary to 5K1, the Court is entitled to hear information

10  beyond what leads to a prosecution.  What Mr. Scala can

11  provide is the extent to which the information was

12  corroborated, the significance of the information, the degree

13  to which it could have led to additional prosecutable cases,

14  the impact on the investigation.

15            All of that is important information that the

16  Government has yet to provide, and, I think it puts

17  Mr. Donaghy's cooperation in full context.

18            At this point, I assume what the Government is

19  saying is that there was credible information, honest

20  information, that Mr. Donaghy had provided regarding game

21  manipulation by other referees, and the Government is

22  crediting him with that amount of cooperation and crediting

23  him with the fact that that's true.

24            The question now is what significance there was

25  to the investigation, what corroboration there was, and all of

1    that Mr. Scala can provide information about.

2              The other issues he can provide information

3    about deal with the variance and the disparity between

4    Mr. Battista who was the leader of this activity.

5              THE COURT:  Why can he provide any better

6    information about that?  The facts of that are before the

7    Court, Mr. Lauro, I don't think that they're disputed in any

8    way.

9              The Government has agreed that Mr. Battista had

10   a leadership role.  Mr. Martino's role in the offense has been

11   set forth in the pre-sentence report and in Mr. Donaghy's

12   pre-sentence report.  You haven't taken issue with any of the

13   factual recitation, I don't understand what is not clear.

14             Do you believe that I'm incapable of

15   understanding the roles as set forth in the pre-sentence

16   reports, you haven't taken issue with any of that.  It's

17   there, I don't know why I need a case agent to repeat the

18   information to me and tell me what I'm supposed to think about

19   it.

20             MR. LAURO:  That wasn't the purpose at all, Your

21   Honor.

22             THE COURT:  All right.

23             MR. LAURO:  The purpose is to give the Court the

24   opportunity to hear without any kind of additional commentary

25   by lawyers as to the full extent of Mr. Donaghy's cooperation

1   and the Government has not done that.

2              It's been our responsibility to do that, I

3   believe, in good faith that Mr. Scala has additional

4   information regarding the corroboration of the information

5   that Mr. Donaghy provided.

6              THE COURT:  But corroboration means what?  It just

7   means that he was being candid which no one seems to be

8   disputing at this point in time.

9              MR. LAURO:  Well --

10             THE COURT:  I don't think that you want to turn

11  these proceedings into a situation where you call a witness

12  and then we're going to have letters and submissions again by

13  the people referenced about how this never happened, and

14  somehow we're ending up with a trial of an entirely different

15  proceeding.  I just think that it's taking the case pretty far

16  afield.

17             MR. LAURO:  And we don't want to do that, Your

18  Honor.

19             THE COURT:  Well, it seems like that's exactly what

20  you want to do, Mr. Lauro.

21             MR. LAURO:  When I submitted my letter, the

22  Government's response was that Mr. Donaghy's cooperation was

23  overstated or exaggerated.  I think now what the Government is

24  saying is that the extent to which Mr. Donaghy provided

25  information about game manipulation, that was either

1  corroborated or confirmed, and as a result, Mr. Donaghy should

2  get full credit for that before Your Honor.

3          If that's the Government's position, that there

4  is absolutely no question that Mr. Donaghy's cooperation in

5  all respects with respect to the NBA matters was corroborated,

6  then I don't think there is a need.

7  THE COURT:  I don't know what "corroborated" means

8  one way or the other.  The Government has not come before the

9  Court and said that anything that you put in your letter is

10 something that they didn't, that is not true, that they're

11 disputing.  I haven't seen anything like that from the

12 Government.

13         Am I wrong, Mr. Goldberg?

14 MR. GOLDBERG:  I want to clarify one important

15 point.

16 THE COURT:  Okay.

17 MR. GOLDBERG:  We don't take issue that Mr. Donaghy

18 informed the Government of the matters set forth in

19 Mr. Lauro's June 10th letter, but a lot of it was

20 unsubstantiated and that's important.

21         So, we've never taken the position that

22 Mr. Donaghy has lied to us, but there's a difference between

23 telling the truth and believing you're telling the truth and

24 finding out later that a number of the allegations don't hold

25 any water.

1           MR. LAURO:  Well, that gets to my point, Your Honor,

2    because if that's the case then I do want to call Mr. Scala

3    and he should tell Your Honor what's been corroborated and

4    what hasn't been because that goes to the significance of the

5    cooperation.  It goes to the extent, it goes to the nature,

6    and those are all the factors under 5K that Your Honor is

7    entitled to hear about.

8           That's exactly the point that I was making.  If

9    they're going to take the view that not everything was

10   corroborated, then Your Honor needs to hear from the case

11   agent.

12          MR. GOLDBERG:  Your Honor, there is absolutely no

13   authority for what Mr. Lauro is asking this Court to do.  He

14   cites Bruno.  Bruno was a case where the Government declined

15   to file a 5K letter and the Court said that the district court

16   was nonetheless entitled to consider all information.

17          And, with all due respect to the Court, in

18   situations like these, unlike what Mr. Lauro is saying, the

19   Court does not have complete discretion.  The cases that we

20   set forth this morning, and the cases in this line of

21   reasoning, give a tremendous amount of discretion to the

22   Government.

23          That's what the cooperation agreement does and

24   there's just absolutely no precedent, no basis, to support the

25   notion that when a cooperating defendant is somehow

1    dissatisfied with the Government's good-faith assessment that

2    they could call an individual agent.  Agent Scala is not even

3    the case agent, he was the supervisory agent.  They can call

4    individual Assistants to the stand?  There is absolutely no

5    authority whatsoever for this kind of move.

6              MR. LAURO:  Your Honor, there's a difference between

7    a cooperator who provides information which the Government may

8    or may not corroborate and substantiate and then a cooperator

9    like Mr. Donaghy who provides information that, in fact, the

10   federal agents have substantiated.

11             THE COURT:  What is your basis for saying that?

12   That the federal agents have substantiated?  What's your basis

13   for making that statement?

14             MR. LAURO:  Well --

15             THE COURT: Do you have any basis of making that

16   statement?

17             MR. LAURO:  I believe that that will be the

18   testimony.

19             THE COURT:  But you don't have any basis.

20                  The bottom line here is, under the terms of the

21   plea agreement, it's the good-faith determination by the

22   Office that the defendant has -- excuse me, let me go again.

23   That the Office's good-faith assessment of the value,

24   truthfulness, and completeness shall be binding on him.

25                  You have made no showing that the Government

1    has operated in anything but good faith and it just seems like

2    to me that what we're exploring here is sort of a fishing

3    expedition of what you believe somebody may say or may not

4    say.  Quite frankly, Mr. Lauro, my concern is it may

5    ultimately end up detrimental to your client as opposed to

6    being helpful to your client.

7                    At this point in time, based on the

8    submissions, I understand that the Government at this point in

9    time based, based on their letter, believes that Mr. Donaghy

10   has been truthful about the principal matter about which he

11   cooperated.

12                   They're not taking the position that he was

13   somehow being disingenuous about other information that he's

14   provided, but that's not the same as saying that it was

15   information that they felt that they could proceed on.

16                   And I think that there's nothing in the record

17   to suggest that they're not operating in good faith, and I'm

18   not inclined to have a hearing on this matter.  So, I'm going

19   to deny the motion to call Agent Scala on this.

20                   I want to turn now to some of the issues

21   regarding the request for restitution.

22                   Mr. Lauro, I want to clarify your position.

23   It's not your position that the NBA is not entitled to any

24   cost for assisting the Government, is it?

25                   MR. LAURO:  Our position is that the NBA would be

Oral Argument                                      25

1    entitled to costs consistent with the statute, that's correct.

2              THE COURT:  Well, what does that mean?

3              MR. LAURO:  Well, to the extent that there are costs

4    that are a direct and proximate result of the activity that

5    Mr. Donaghy pled guilty to, then those costs would be

6    compensable.

7                   Our issue is --

8              THE COURT:  Tell me what you concede.

9              MR. LAURO:  Well, what I would concede, for example,

10   is, in an instance where the NBA had to take time by employees

11   to respond to a government subpoena relating to Mr. Donaghy,

12   or to the extent that an NBA official took time off of

13   activities that related to Mr. Donaghy, those are compensable

14   costs.

15                  What's not compensable under the statute are

16   instances where three or four lawyers spend hours and hours

17   prepping witnesses, or three or four lawyers spend hours

18   looking at documents that we don't even know what they are, or

19   instances in which multiple lawyers attend interviews by the

20   Government.  Those are all costs that are clearly

21   consequential, clearly collateral, and are not recoverable.

22             THE COURT:  Why are they collateral?  There's a

23   difference between being overkill and being collateral.

24                  I mean, you're not contesting, I take it, the

25   fact that the NBA paid all these bills.

1           MR. LAURO:  I'm assuming that's the case.  I don't

2    know, I can't tell what the NBA paid and what they haven't

3    paid or how they spend their money, but the problem is --

4           THE COURT:  If they are required to hire lawyers to

5    meet with the Government and produce documents and they pay

6    those bills, as long as those costs are associated with doing

7    work connected with the investigation as opposed to doing some

8    or work that's not for the purposes of assisting the

9    Government, why wouldn't Mr. Donaghy be responsible for those

10   costs?

11          MR. LAURO:  To the extent that they're reasonable

12   and appropriate and responsive to something that the

13   Government wanted, we don't contest that issue.

14          THE COURT:  So, what do you say is a figure that you

15   think would be reasonable?

16          MR. LAURO:  I don't know.

17          THE COURT:  You've reviewed the records that have

18   been submitted and you've reviewed the affidavits.  The

19   affidavits explain the entries.  I agree with you that the

20   entries themselves are somewhat vague, but the affidavits

21   explain the entries.

22              In Paragraph 5 of your letter, you present

23   examples of some entries that don't make sense or you believe

24   don't make sense or are not specific enough.  But then, when

25   you go to the various affidavits, and they explain those

1   entries and they explain what was being done and what was

2   being undertaken.

3           MR. LAURO:  Here's the problem, though, Your Honor.

4   As you look through the affidavits, they are not very specific

5   as to what documents were reviewed, what witnesses were

6   interviewed, why there had to be multiple lawyers

7   participating.

8               For example, there are thousands and thousands

9   of dollars devoted to document production.  We have multiple

10  lawyers looking at the same documents.  We don't even know if

11  there was a thin file folder of documents or boxes of

12  documents.  There's nothing specific in terms of the

13  information provided by the NBA.

14              There's no basis on which to draw a reasonable

15  conclusion as to whether or not these costs were necessary.

16  We have witnesses who are being interviewed.  Now, the witness

17  time certainly is compensable, but we have multiple lawyers

18  spending hours and hours prepping these witness action.  Why?

19  I have no idea.  And why multiple lawyers had to be present

20  during those interviews.

21          THE COURT:  I think at the interviews there were two

22  lawyers present.

23          MR. LAURO:  I think that's right, but then there

24  were instances --

25          THE COURT:  Have you done any analysis of the

1    records to suggest something like there were four lawyers

2    present or five lawyers present?  I haven't seen that kind of

3    analysis.

4              MR. LAURO:  I haven't either.  I think there's

5    probably two for the most part.  But what they haven't done is

6    broken down for Your Honor a chart that would explain or

7    identify each and every item that they were working on, the

8    lawyers present and the time spent.

9              We have, for example, Mr. Anders billing nine

10   hours for meeting with NBA executives and then 18 hours

11   spiking with the Government and the NBA executives.  How is

12   that compensable under the statute?

13             THE COURT:  This is not something you refer to in

14   your letter, is it?

15             MR. LAURO:  Well, Your Honor, we take issue with all

16   of it, but we certainly identify issues of that nature,

17   absolutely.

18             THE COURT:  Well.

19             MR. LAURO:  And then we identify for the Court these

20   document productions that we have no knowledge of.  We don't

21   have any information about what documents were produced.  This

22   is a bare bones submission to the Court, it has not been

23   vetted by the Government which has the responsibility to go

24   through it and determine what's compensable and what's not.

25             Instead, the Government has said that every

1   dollar that the NBA wants, the NBA is entitled to get and

2   that's just not right.

3                  A lot of this is duplicative.  A lot of this

4   has multiple lawyers working on the same matters.

5          THE COURT:  What is duplicative?  Give me an example

6   of something that's duplicative.

7          MR. LAURO:  First of all, when you look at these

8   affidavits, it's hard to identify exactly what the lawyers

9   were doing on particular days with respect to particular

10  witnesses.  They don't identify the witnesses for us; they

11  don't identify the documents.

12                 You have billings in June for a document

13  production, okay, from the Arkin firm we don't know how many

14  document were produced.  We have multiple lawyers working on

15  it without identifying what tasks each lawyer was performing.

16  We have witnesses, or at least one witness produced.  We have,

17  again, multiple lawyers preparing a witness and then probably

18  two lawyers showing up.  And that's just June.

19                 In mid-July, we have Mr. Anders spending hours

20  and hours, he says, talking with NBA officials.  I don't know

21  how that's compensable.  We then have a document production in

22  August which was handled by Mr. Anders's firm.  We have no

23  idea what was produced, why it was produced, at whose

24  direction.  All we have know is that multiple lawyers, Anders,

25  Shin, Waldman and paralegals were reviewing those documents.

1    None of those tasks are broken down in any particular detail.

2              We then go to August where there were multiple

3    witnesses produced.  The Government says that they asked those

4    witnesses to be produced.  The witness time would be

5    compensable and maybe time for a lawyer to show up with a

6    witness, but why does it take multiple lawyers to prepare a

7    witness who was a witness, not a subject or a target, as well

8    as multiple lawyers being present for the interview.

9              We then go to October where there was an

10   additional document production.  And, again, this is all after

11   Mr. Donaghy has pled guilty.  We don't know what documents

12   were produced, but we do know that at least two lawyers were

13   working on the document production.

14             Mr. Anders, during that production, spent over

15   five hours speaking with government lawyers without any detail

16   of the subject matter or why it was necessary.  I don't think

17   I've spent five hours talking to government lawyers.

18             We go into April where we have other documents

19   produced.  This attempt by the NBA clearly does not conform to

20   what courts require in terms of a clear, specific, demarcated

21   proposal or submission.  We cited the Krear v. 19 Trustees

22   case which is a Second Circuit decision.

23             THE COURT:  Is that a decision on restitution or a

24   decision on lawyers' fees?

25             MR. LAURO:  Correct.  But I think that's applicable

1    here where the concept of reasonable fees require lawyers to

2    identify specifically what they're asking for in order for the

3    Court to make a reasonable determination, and I think the

4    restitution fee requires a reasonable determination.  You're

5    not entitled to the Bentley of law firms, you're entitled to

6    what's reasonable.  And here what we have is a situation where

7    they were working on multiple tasks that could be performed by

8    one lawyer or not any lawyer at all, for example.  A lot this

9    work could have been done by paralegals, instead it was done

10   by layers of lawyers.

11          THE COURT:  Where do you make that argument in your

12   letter?  Anywhere that the work was done by people that it

13   shouldn't have been done by.  That's not in your letter.

14          MR. LAURO:  It's not specifically, but certainly --

15          THE COURT:  I went through every entry that you made

16   in your letter and looked at the records to see whether there

17   was some explanation for it and I found explanations.  But

18   what you're saying now I don't think you've said before.

19          MR. LAURO:  Well, I think what I'm saying now is

20   certainly implicit in the letter, and also, what our complaint

21   was fundamentally we can't tell from these affidavits.

22          THE COURT:  So, then, it's your position that

23   because you can't tell specifically from the affidavits or

24   there's not enough detail that they're entitled to no

25   compensation.

1           MR. LAURO:  Yes, Your Honor, because it's their

2    burden.  And I think you can tell from these time records that

3    it was never anticipated that restitution would be sought

4    because, otherwise, you'd have time records that were very

5    clear in terms of the particular tasks that were being

6    performed and here what we have is sort of block time entries

7    that don't identify clearly what those tasks were.

8                   And for the Court to draw a reasonable

9    assessment as to what was required, I think Your Honor needs

10   more information.  To just say to the Court, "Yeah, we did a

11   document production and we put three lawyers on it is not

12   enough sufficient."

13                  There has to be at least a degree of

14   specificity that allows the Court to determine what's

15   reasonable and what's not reasonable and they haven't done

16   that for Your Honor.  Instead, they've submitted very

17   generalized affidavits that say, "Yeah, we prepped witnesses

18   or we did document productions," but how can the court based

19   on that draw a logical assessment as to what was reasonable or

20   not.

21                  I found, for example, a letter that was $1,500,

22   a two-paragraph letter to me that they were going to

23   originally charge us --

24           THE COURT:  They're not.

25           MR. LAURO:  They took that out.

1           THE COURT:  That's not in their submission.

2                 Now, is there anything in their submission

3    that you can point specifically now that is not appropriate.

4           MR. LAURO:  I can't tell, it's impossible to tell.

5    If Your Honor is told that we produced a notebook of

6    documents, and there were five lawyers reviewing those

7    documents and three paralegals, that's not reasonable I

8    submit.  There's no way of telling that based on this

9    information that the NBA has provided.

10                They haven't done that, they haven't provided

11   requisite detail, and frankly, it's the Government's

12   responsibility under the statute to provide that information

13   under §3664(e).  It's the Government's burden to go through

14   and determine what's compensable.  Rather than just accepting

15   what has been submitted by the NBA, it requires a lot more

16   than just saying, "Here's what we charge the NBA and you have

17   to pay for it," without going through line by line and

18   determining what's reasonable and what under the statute is

19   compensable.

20          THE COURT:  Mr. Goldberg, before I hear from you, do

21   you want to be heard on this?

22                And what is your position with respect to the

23   issue?  Taking, first of all, with respect to the salary

24   issues, you are now in agreement with Mr. Lauro's position

25   that Mr. Donaghy is not responsible for any of the other

1    seasons.

2              MR. GOLDBERG:  Under Restitution Law.

3              THE COURT:  Which is the conclusion the Court had

4    come to at the last proceeding which is why I was questioning

5    you so carefully about that.

6              MR. GOLDBERG:  Yes.

7              THE COURT:  You agree with the Court's assessment of

8    what the case law is and you agree with Mr. Lauro on that?

9              MR. GOLDBERG:  Indeed, Your Honor.

10             THE COURT:  Okay.  Now, with respect to the $76,000

11   versus the $46,000.

12             MR. GOLDBERG:  Or 72.

13             THE COURT:  72 versus 46 depending on whose figures

14   you're looking at, this deals with Mr. Donaghy's compensation.

15             Originally, I believe in the pre-sentence

16   reports, what had been done was just the game percentage was

17   taken of the base salary, not all the additions.

18             MR. GOLDBERG:  Right.

19             THE COURT:  What is the Government's position with

20   respect to that issue?

21             MR. GOLDBERG:  Well, first, let me start by saying

22   that the $45,000, I think it is, that we came to, or $43,000,

23   was an estimate for the purposes of the guidelines.  It wasn't

24   a --

25             THE COURT:  For the loss?

1          MR. GOLDBERG:  For the loss, right, for '06-'07.

2                It wasn't intended to be a line item

3    calculation for the purposes of Restitution Law.  We were at a

4    bit of a disadvantage because it's the NBA that has all the

5    payroll records and knows better what it pays its employees.

6          THE COURT:  But, I understood you this morning to

7    say that you weren't taking a position on that, that's what I

8    wanted to hear, that was this morning.

9          MR. GOLDBERG:  I haven't found any law which sort of

10   draws a line on a services case like that, and there aren't a

11   lot of cases like this, where it draws a line on an honest

12   services case between the actual services provided, the salary

13   versus fringe benefits, or expenses incurred on the part of

14   the employer going to the location, for example, where the

15   services need to be provided.

16               I, frankly, don't have a position, Your Honor,

17   and I think it's well within the Court's discretion to include

18   those costs but we don't have a position.

19         THE COURT:  Aren't you going to have to be the party

20   responsible for defending what the Court does in the Court of

21   Appeals?

22         MR. GOLDBERG:  We are, Your Honor, and as I say I

23   think it's well within the Court's discretion.

24         THE COURT:  To pick either figure.

25         MR. GOLDBERG:  I think you could.

1           THE COURT:  All right.

2           MR. LAURO:  We obviously have --

3           THE COURT:  Now, let me ask you about the other

4    issues --

5           MR. GOLDBERG:  Right.

6           THE COURT:  -- that Mr. Lauro has been addressing

7    and, Mr. Shechtman, I will give you your time to speak.

8           MR. GOLDBERG:  I will let Mr. Shechtman speak, of

9    course --

10          THE COURT:  No, I want to hear from you.

11          MR. GOLDBERG:  I'm going to, Your Honor.

12              I think what Mr. Lauro is proposing is a more

13   exacting set of requirements than is set forth under the

14   restitution statutes.

15              Your Honor has gone back at the victim multiple

16   times and asked it to more precisely substantiate the costs

17   and break things out; and I think in fairness that the victim

18   in this case has taken a fairly reasonable approach by

19   eliminating items like the $1,500 item that Mr. Lauro has

20   identified.  I will say, for the record, that I don't recall

21   ever having a witness meeting where the witness was

22   accompanied by more than two lawyers.  And, so, I think the

23   victim in this case has provided sufficient information and

24   we're prepared to defend on appeal if that's what you're

25   getting at, Judge.

1          THE COURT:  The only reason I made those comments,

2     Mr. Goldberg, is I don't think the Government can simply take

3     the position on these issues, well, you know, whatever you

4     want, beats me.  I think the Government has to argue a

5     position one way or the other.

6          MR. GOLDBERG:  And we have, Your Honor.

7          THE COURT:  It's not just Mr. Shechtman, I

8     understand you're doing that now.

9          MR. GOLDBERG:  We also did it in our letter.  We

10    indicated in our letter that the costs are recoverable under

11    the law and that's our position.

12               We tried to set forth for Your Honor --

13         THE COURT:  And you don't believe that, as Mr. Lauro

14    has stated, based on your knowledge of the case, that this was

15    overkill or anything in connection with producing documents to

16    the Government.

17         MR. GOLDBERG:  Your Honor, obviously I'm not privy

18    to what is done inside the law firm.

19         THE COURT:  Right.

20         MR. GOLDBERG:  But I can tell you that I reviewed

21    line by line the cost submissions, the exhibits, and nothing

22    jumped out at me as being out of the bounds of what assistance

23    was provided.

24               Mr. Lauro has, at times, questioned why the NBA

25    has been communicating with the Government.  They're a victim

1    in a criminal case.  I mean, it's routine for us, for the

2    Government to communicate with the victim of a criminal case,

3    whether it be the widow of a murder victim or the victim of a

4    white collar fraud.  So, I don't think there's anything

5    nefarious about that.

6              THE COURT:  I take it, Mr. Goldberg, that it would

7    also be the Government's position that the case law regarding

8    restitution is not precisely on all fours with the case law

9    that talks about recovering attorney's fees.

10             MR. GOLDBERG:  In a civil context, yes, you're

11   right.  And I think that all goes within the Court's

12   discretionary standard.  I believe that if Your Honor is

13   seeing costs and is persuaded by Mr. Lauro's arguments that

14   costs are excessive, it's well within the Court's discretion

15   to curtail the award.  I haven't seen that, based on what I'm

16   privy to, I haven't seen that in the submissions.

17             THE COURT:  This is a very minor entry, but one I do

18   have a question about is I don't take it, Mr. Goldberg, that

19   it was the request of the Government to have attorneys for the

20   NBA attend any of the proceedings before this Court.

21             MR. GOLDBERG:  It wasn't by request, but I think the

22   statute specifically provides for that.  If I'm not mistaken.

23             THE COURT:  It says, "Attendance at proceedings,"

24   but that presumes to me that they're a witness or something.

25   I mean, there was no need for the Government, in terms of the

1   Government's investigation, to have NBA lawyers either present

2   at Mr. Donaghy's plea or at any of the proceedings involving

3   Mr. Battista or Martino.

4              MR. GOLDBERG:  There was no investigative interest

5   for that, but I will say that under the new victim statutes,

6   the Government is required to inform the victim about every

7   proceeding, however minor, and presumably with the goal of

8   allowing them to attend if they want to.  So, I think that

9   does fall within the statute, Judge.

10             THE COURT:  Okay.  Mr. Shechtman you just want to be

11  heard briefly?

12             MR. SHECHTMAN:  Very briefly, Judge.

13             I take it that if I understand the math now I

14  have three people, most importantly including the Court,

15  against me on the 2003-2006 issue.  I do think there is law on

16  our side, but I won't press the point if the Court has settled

17  on it.

18             On the issue of investigative costs, we've

19  tried very hard to detail what those were.  I don't think they

20  were extravagant.  Mr. Lauro has a way of continuing to use

21  the word "multiple" when the answer always turns out to be

22  two.  I don't think in this district or any other two is

23  unreasonable.

24             We have not identified the witnesses or the

25  specific documents at the Government's request, but I hear the

1   Government is saying, knowing who the witnesses were and what

2   the documents involved were, that those efforts were

3   reasonable and my own sense supports that.

4                   And, as to participation at proceedings.

5              THE COURT:  Right.  You want to address that?

6              MR. SHECHTMAN:  I can give the Court a case, I don't

7   have it with me, but I know there is one case where the victim

8   showed up at sentencing and the answer was:  Compensable.

9   That it wasn't simply proceedings to testify at, it is

10  proceedings to keep up and know what's going on with the case.

11                  It is particularly important to the NBA because

12  what was partly so harmful in this crime was the reputational

13  loss which one can't be compensated for.  But to be here, to

14  know what was being said, to be on top of the matter so that

15  the Commissioner and others were in a position to respond to

16  questions was critical to the NBA and that's why lawyers were

17  here, it was not for a voyeuristic purpose.

18             THE COURT:  It was not for what?

19             MR. SHECHTMAN:  A voyeuristic purpose.

20             THE COURT:  I'm not suggesting it was inappropriate

21  for anyone to attend the proceedings, that wasn't my point.

22  The question was whether it was compensable.

23             MR. SHECHTMAN:  And, Judge, if you'll accept one

24  more one-sentence letter from the NBA, I will send you a cite

25  of a case.

1          THE COURT:  That means I have to have four more

2    submissions from everyone else.  I'm not sure I'm up to it.

3          MR. SHECHTMAN:  Whatever the Court wants.

4          THE COURT:  No, that's all right I really don't want

5    any additional submissions.

6          MR. SHECHTMAN:  And nothing further.

7          THE COURT:  All right.  Thank you.

8                 This, again, is a minor point but let me just

9    raise it.  This deals with the fees sought for the Arkin firm.

10   I think this is just a mistake, but you're seeking $21,828 and

11   that's a figure the Government relied on.  But that was in

12   your letter, Mr. Shechtman, but I think when you go back and

13   look at these figures themselves it's $21,878.  I think that's

14   totally a minor point over $50 this was a mistake.

15                 Am I correct about that?

16         MR. SHECHTMAN:  Yes.

17         THE COURT:  Do you understand that, Mr. Lauro?

18         MR. LAURO:  Yes.

19         THE COURT:  And, Mr. Lauro, one thing that I also

20   need from you is, another minor point, is Page 2 of Steven

21   Block's report which was not sent, it was not in the copy.  I

22   don't think there's anything further you need to add to your

23   remarks with response to Mr. Shechtman.

24         MR. LAURO:  There is one issue, Your Honor.

25         THE COURT:  Okay.

Oral Argument                                    42

1        MR. LAURO:  That is the offsetting amounts that we
2   haven't addressed.
3        THE COURT:  Well, I understand that the money that
4   was not paid, the 40 something thousand dollars was not
5   included in the restitution.
6             So what's the offset issue?
7        MR. LAURO:  Well, we also have the severance amounts
8   that Mr. Donaghy would be entitled to and that, I think, adds
9   up to about $130,000.
10       THE COURT:  I imagine that there's some --
11            Is that the subject of any dispute whether he's
12   entitled to those severance payments?
13       MR. LAURO:  I don't think so. I also believe, Your
14   Honor, if you recall at the last hearing, the Government said
15   a portion of the $40,000, really, should be identified as
16   money going back since the NBA retained that money.
17       THE COURT:  I didn't think that was the Government's
18   position.
19       MR. LAURO:  I thought that was your point.
20       MR. SHECHTMAN:  Judge, if I may?
21       THE COURT:  Yes, on the severance issue.  Is that
22   something that's the subject of civil action or dispute.
23       MR. SHECHTMAN:  It's a subject of dispute because
24   our understanding of New York State Law is, as an unfaithful
25   servant, he's not entitled to anything that he earned or going

Oral Argument                                      43

1    forward might claim.  So, the answer is very much so.

2                    And, I would say on what Your Honor called,

3    "The higher math issue," because you take it out of the top,

4    it is the case that a portion of it winds up going in his

5    favor.

6                    So, I think that's all the Government said last

7    time, that we both think it comes off the top.  It's Your

8    Honor's higher math and that's what we did in our calculation.

9                    THE COURT:  So, it shouldn't be an offset?

10                   MR. SHECHTMAN:  Shouldn't be an offset because it's

11   been subtracted from the salary figure.

12                   THE COURT:  And that's the Government's position as

13   well?

14                   MR. GOLDBERG:  Yes.

15                   THE COURT:  Okay.  All right.

16                   Then, I think we've adequately addressed those

17   issues.  I don't think there's anything else that we haven't

18   addressed in your submission.

19                   Is that correct, Mr. Lauro?

20                   MR. LAURO:  Not that I'm aware.

21                   THE COURT:  All right.  Thank you.

22                   Ms. Herr, do you want to be heard?

23                   MS. HERR:  Yes, Your Honor.

24                   In the rush to submit a letter to the Court, I

25   missed a couple issues.

Oral Argument                                        44

1           THE COURT:  Okay.

2           MS. HERR:  And the Court touched on one which dealt

3    with the time period between April 10th and April 28th of

4    2007.  2008, I'm sorry, which affects, which the Government

5    suggests can be parsed out of the full amount of restitution

6    and assigned to Mr. Battista and Mr. Martino.  And, of course,

7    they now conceded that they've made a mistake on the front end

8    and they've made a mistake on the back end, and I guess when

9    I -- and then the Court brought to my attention, which I

10   hadn't really realized, that the Government then -- that the

11   NBA submitted an affidavit which supports the charges for all

12   of the charges.  But I specifically am dealing with the ones

13   from April 10th to April 16th which are the only ones that are

14   really kind of directly claimed to be associated with

15   Mr. Martino.

16           When I look at Mr. Anders --

17           THE COURT:  That's not the only amount that

18   Mr. Martino is being held accountable for?

19           MS. HERR:  No, but he is being held for --

20           THE COURT:  Solely accountable for.

21           MS. HERR:  Yes.  I think the Government's position

22   is that the charges between April 10th and April 16th.

23           THE COURT:  Right.

24           MS. HERR:  I think that's his position today are

25   assignable to Mr. Martino and Mr. Battista.

1              THE COURT:  Only?

2              MS. HERR:  Only.

3              MR. GOLDBERG:  I think Ms. Herr is speaking in the

4    context of the Government assistance costs.

5              MS. HERR:  Correct.

6              MR. GOLDBERG:  Not the honest services loss.

7              MS. HERR:  I'm only dealing with the participation

8    charges and I think, I guess, the only reason I bring this to

9    the Court's attention.  One of the arguments I made was

10   similar to Mr. Lauro's is that they are not specific and

11   difficult for the Court to determine.

12             The Government has suggested that they are, in

13   fact, attributable to only Mr. Martino and Mr. Battista but

14   certainly the Court did not include that from the documents

15   that have been submitted by the NBA.

16             And I point, specifically, to the time records

17   of Mr. Anders and then his affidavit.  His affidavit suggests

18   that he spent 16 hours and he explains responding to requests

19   for documents, coordinating witness preparation sessions, and

20   supervised production of additional documents.

21             But when you look at the specific entries, and

22   I could do this more easily than Mr. Lauro, because I am

23   dealing with a very small period of time.  All I see is

24   multiple e-mails, multiple TCs, multiple e-mails.  I don't

25   know how that relates to responding to requests, coordinating

1    witnesses.  I don't understand that and I guess I don't know

2    why the Court has to rely on the representations of the

3    Government or the NBA.  I don't know what any of those costs

4    do, I don't know.  And I think, in retrospect, the Government

5    could say, "Gee, yeah must have been Mr. Martino owes or

6    Mr. Battista's expenses."  But there is no way for the Court

7    to independently and objectively determine that from the

8    records that have been submitted.

9              And I made that in one of my arguments that the

10   NBA, if it really wanted to assess the parties for the costs,

11   should have isolated the time they spent on procuring

12   documents, prepping witnesses, and reviewing documents and all

13   the other costs that they've charged to the 2006-2007 season

14   and they did not do that.  They want the Court now to look at

15   all the costs and, again, the only ones that you can actually

16   look at.

17             THE COURT:  In other words, your concern is that

18   because you believe some of the document production dealt with

19   previous seasons and your client was only involved in the one

20   season that he should not be held accountable for that, for

21   any portion of those costs.

22             MR. LAURO:  Correct.

23             MS. HERR:  Correct.  And there are many documents

24   that we received and I'm sure the Government has many more

25   that we have not received, that deals with the period

1    2003-2004, 2004-2005, 2005-2006, and some of 2006-2007 that

2    don't relate to the period that my client pled guilty to.

3            THE COURT:  You don't mean that you received in

4    discovery?

5            MS. HERR:  Yes.  And based on the records, there

6    were a lot of documents that I haven't received because there

7    are a lot of records and I don't have that many, but I have to

8    assume that the Government, because it has gotten records that

9    relate back to 2003 and, again, I won't go through all those

10   years.

11           So, I guess when you look at this, I don't know

12   how you could possibly determine what costs are associated

13   with the 2006-2007 season.  And then to be more specific, I

14   don't know how you determine what costs were specifically

15   Mr. Martino's and Mr. Battista's when the Government says that

16   period between April 10th and April 16th and that may seem

17   small, but I think that's indicative with the problem with the

18   restitution.

19           It doesn't really relate to the affidavits

20   supplied by the witnesses and it's hard for the Court to

21   determine based on the entries exactly what the NBA did and

22   for what defendant or what years.

23           In addition, Your Honor, I conceded the $9,930

24   for the game review and I was rushed and I was not quite sure

25   if the game review consisted of games from the 2003 season all

1   the way up to 2007.  If it does, then I would suggest to the

2   Court that I don't really mean that because I don't know that

3   I saw anything and there may have been something in discovery

4   in the documents that were provided but I've spent --

5           THE COURT:  Was the game review just of the one

6   season?

7           MR. GOLDBERG:  I believe it was '06-'07, but if I

8   can make a legal point?

9               I think what Ms. Herr is trying to do,

10  understandably, is say that because we can parse out certain

11  costs, then those that we can't parse out should be completely

12  excluded.

13              And the _Fogel_ decision itself, that's the

14  holding of _Fogel_, well, that's what they did in _Fogel_; I don't

15  know if it was direct holding.  The victim came forward, it

16  was Metropolitan Insurance Company, and said, "We can't parse

17  out between these co-conspirators."  The Court said, "You

18  don't have to, it's still recoverable."

19              And so, although I believe in the view that if

20  you can parse out you should properly apportion, I don't

21  believe the inverse is true, that if you can't parse out then

22  it's completely not recoverable.

23          THE COURT:  So, your belief would be since you can't

24  parse out from the document production --

25          MR. GOLDBERG:  Exactly.

1          THE COURT:  -- documents that were produced or

2   researched for earlier times versus those that pertain

3   directly to the later season that Mr. Martino was involved in.

4          MR. GOLDBERG:  Right.  And there may be documents

5   that the document itself covers multiple periods; or if you

6   want to talk about witnesses, the witness may have something

7   to say about both time periods.  I mean, it would be almost

8   impossible to get down to that level of detail in hindsight.

9          MS. HERR:  But, Your Honor, I think that points to

10  the foolishness of the Government's position.

11          I read _Fogel_ myself and the conspiracy in that

12  case involves two individuals that are involved in a fraud.

13  There is no argument, there is no discussion about it being

14  separate time frames that one preceded the other.

15          There are things that distinguish this case

16  from the _Metropolitan_ claim.  In that claim, they were

17  involved in a fraud and the allegation is that they were

18  involved in a fraud that covered a particular timeframe

19  involving people who had different roles:  A doctor and a

20  chiropractor.  I mean, a lawyer and a chiropractor, excuse me.

21          In this case, the Government and the NBA's

22  position is that Mr. Martino would have to have foreseen that

23  the investigation would go back to 2003, and when we deal with

24  restitution we are looking for directly and foreseeability and

25  clearly Mr. Martino could have not foreseen that what he did

1   in December of 2006 would have led to an investigation that

2   went back to 2003.

3           THE COURT:  But wasn't he aware, I mean, of the fact

4   that the entrée into Mr. Donaghy.  Their entrée into

5   Mr. Donaghy, Mr. Martino and Mr. Battista was, as a result of

6   their knowledge that he had been engaging in transactions

7   with, I believe, it's Mr. Concannon.  So, understanding the

8   genesis of their relationship, he would have understood that

9   they would have looked backward.

10          MS. HERR:  I guess that's something that he learns

11  in 2006.  He learns -- and I don't know that he -- there is

12  certainly no evidence that he understood that it preceded the

13  2006-2007 season.

14          So, the season is already underway.  The season

15  begins in October, I believe.  Mr. Martino becomes involved

16  December 16th, I think is the earliest date that the

17  Government can point to.  So that there is certainly no reason

18  for Mr. Martino to assume that it occurred in the seasons

19  preceding that.  There is just nothing to that effect, we know

20  that the season is already underway.  We know that at some

21  point during the season, Concannon is giving picks to Donaghy

22  and they act on that information.  Mr. Battista suggests

23  acting on that information and enlists Mr. Martino.

24          So, the Court -- you would have to speculate

25  that the Mr. Martino have any understanding that it preceded

1    2006.  I don't think that's a foreseeable consequence.

2           THE COURT:  You mean his only understanding was that

3    the activity with Concannon was in 2006 and not earlier.

4           MS. HERR:  Yes.

5           THE COURT:  That wasn't my understanding factually.

6    But, Mr. Goldberg, am I incorrect about that?

7           MR. GOLDBERG:  You are correct.  It certainly

8    preceded the initiation of the charged conspiracy.

9           THE COURT:  Right.

10          MR. GOLDBERG:  But, I think the short answer to the

11   argument that Ms. Herr is making is that it's unquestionably

12   direct and foreseeable to Mr. Martino that once the Government

13   catches wind of the charged conspiracy; that the Government is

14   going to look backwards and forwards, especially since

15   Mr. Martino knew that there was gambling activity that

16   predated his entry into the scheme.

17          THE COURT:  Well, that was my point.

18          MR. GOLDBERG:  Yes.

19          THE COURT:  That he knew about it.  Was there

20   evidence that he knew about it as far back as the --

21          MR. GOLDBERG:  I don't know if that's the case, but

22   I don't think that matters.  And, again, we're talking about

23   this in the context of costs incurred by the NBA participating

24   in the investigation and prosecution by the Government.

25               So, I think it's a more -- it's a broader

1   standard than what Ms. Herr is articulating.

2          THE COURT:  Okay.  Is there anything further?

3          MS. HERR:  The only thing I also didn't bring to the

4   Court's attention.  And, actually, the Government cited in its

5   letter, is that the Court is permitted to apportion liability

6   based on the economic circumstances of each defendant and the

7   role that each defendant played in the offense.

8              So, although I've listed what I believe are the

9   correct restitution figures, I haven't suggested to the Court

10  that they could be apportioned based on role in the offense

11  and economic circumstances.

12              And I think in light of the fact that

13  Mr. Donaghy received a salary that is part of the restitution,

14  it would be unfair to Mr. Martino to assess an equally, and in

15  that part of the restitution.

16              In addition, as to the participation costs, and

17  I think that may be more appropriate, if the Court believes

18  that Mr. Martino is, in fact, responsible for the costs that

19  date back to the 2003 part; that, again, it should apportion

20  it based on the role of each individual in the offense and the

21  economic circumstances and that would allow the Court then to

22  address the number, whatever number that the Court determines

23  is appropriate, in a manner that would be fair to Mr. Martino

24  and I think --

25          THE COURT:  By apportionment, you are suggesting

1   that if I determine the entire amount of restitution that he's

2   responsible for to be X number that then I should divide that

3   number and only make him responsible for a lesser portion

4   based on his local.

5            MS. HERR:  Yes, that's my understanding of the

6   Cutrell case.  And, again, I was under pressure and really

7   didn't have a chance to --

8            THE COURT:  What case was that?

9            MS. HERR:  United States v. Cutrell, 209 F.3d, 1286.

10           And that's all I have, Your Honor.

11           THE COURT:  Does the Government have any position

12  with respect to the issue of apportionment one way or the

13  other?

14           MR. GOLDBERG:  In our submission on Monday, I wanted

15  to comment further to the Court about what may be a

16  discrepancy within the statute or at least something that I

17  don't fully understand, I will get you an answer by Monday.

18  And that is Section 3664 when it speaks of multiple

19  defendants.  It says that you can consider, as Ms. Herr I

20  think probably quoted from, the economic circumstances of each

21  defendant.  But I believe the Mandatory Victim Restitution Act

22  did away with consideration of economic circumstance of the

23  defendant.

24           Now, those two points may be reconciled by

25  saying that whether to impose restitution should be done

1    without consideration of economic circumstances, but once you

2    apportion you can consider relative economic circumstance.

3    And I suspect that you may already know the answer to that,

4    but I will certainly comment on that in our letter on Monday.

5              THE COURT:  All right.

6              (Pause.)

7              THE COURT:  I just have one other factual question

8    that I should address to you because I'm not sure what the

9    Government's position was.

10             But, with respect to the information about

11   Mr. Donaghy's prior betting activity that is included in his

12   relevant conduct --

13             MR. GOLDBERG:  Yes.

14             THE COURT:  -- Mr. Lauro suggests that that's

15   information that came directly from him.  And my question is

16   whether the Government had prior information about that prior

17   to Mr. Donaghy's cooperation.

18             MR. GOLDBERG:  This is the §1B 1.8 issue which we

19   specified in one of our letters.  The answer is:  We did.

20             THE COURT:  You did?

21             MR. GOLDBERG:  We did.  And I think we indicate in

22   the letter that Mr. Concannon himself informed us of that.

23             THE COURT:  I just didn't know the timing of that.

24             MR. GOLDBERG:  I think I do indicate that he

25   informed us first.  I suspect what Mr. Lauro is going to say

1   that Mr. Donaghy revealed that much earlier.  That may be true

2   but not to the extent and with the level of detail that

3   Concannon did prior to Mr. Donaghy revealing that information.

4   I will, for the record, note that §1B 1.8 doesn't apply.

5           THE COURT:  I know that.

6           MR. GOLDBERG:  Okay.

7           THE COURT:  But to the extent the one thing I wanted

8   to know factually is the information about his prior activity.

9           MR. GOLDBERG:  Yes.

10          THE COURT:  Did that come to the Government's

11  attention first through Mr.  Donaghy --

12          MR. GOLDBERG:  The existence --

13          THE COURT:  -- first or through another individual.

14          MR. GOLDBERG:  The existence of prior activity from

15  Mr. Donaghy; the level of detail from Mr. Concannon, yes.

16          THE COURT:  So, Mr. Donaghy is the one who first

17  brought to your attention that he had been engaged in other

18  betting activity.  The first time the Government knew that was

19  through him.

20          MR. GOLDBERG:  That's definitely before

21  Mr. Concannon's debriefings.  Whether the Government knew

22  about that already I don't know the answer to that.  I believe

23  we did not know about that, I'll defer on that, and I will

24  concede that Mr. Donaghy was the one who brought that to our

25  attention.

1          MR. LAURO:  Your Honor, and also in fairness, the

2  first proffer as you can imagine was more of a superficial

3  examination of a lot of areas and then I think what happened

4  is after Mr. Donaghy revealed that voluntarily, even before a

5  cooperation agreement.

6               Following that proffer, the Government went to

7  Concannon and obviously got a great deal of more information.

8          THE COURT:  The timing issue is the issue I wanted

9  to identify.

10         MR. LAURO:  Your Honor, one other thing, and I don't

11  think the Court misapprehends, Mr. Donaghy's allegations of

12  game manipulation of other referees.  There is no suggestion

13  that Mr. Donaghy participated in that game manipulation and I

14  just want to make that clear to the Court.  There is no

15  suggestion in Mr. Donaghy's cooperation that information he

16  provided to the Government in any way suggested that he

17  himself was involved in game manipulation.

18         THE COURT:  That was very clear from your letter

19  what your position was.

20         MR. LAURO:  Thank you, Your Honor.

21         THE COURT:  Is there anything else?

22         MR. GOLDBERG:  I think we've spoken on that issue --

23         THE COURT:  I don't want to hear anything else on

24  that issue.

25         MR. GOLDBERG:  Fair enough.

1            THE COURT:  And what you just said, Mr. Lauro, was

2    said about three different times in your submission.  So, if I

3    miss that point, you know, heaven help all of you.  I

4    understood that clearly, okay?

5                Is there anything else?  The Government is

6    going to provide me with their letter on Monday where you

7    outlined all of your statements that you made about the

8    restitution issues, about what you're taking in and out.

9            MR. GOLDBERG:  Yes, Your Honor.

10           THE COURT:  All right.  Thank you.

11           MR. GOLDBERG:  Thank you.

12           MR. LAURO:  Thank you.

13           (WHEREUPON, the proceedings were adjourned to July

14   24, 2008, at 9:30 a.m.)

15                                *   *   *

16

17                       <u>CERTIFICATE OF REPORTER</u>

18       I certify that the foregoing is a correct transcript of
     the record of proceedings in the above-entitled matter.
19

20

21

     _____
22   Anthony D. Frisolone, CSR, RDR, FCRR, CRI
     Official Court Reporter
23

24

25

1

## $

**$1,500** [2] - 32:21; 36:19
**$130,000** [1] - 42:9
**$15,000** [3] - 11:22; 12:2, 12
**$21,828** [1] - 41:10
**$21,878** [1] - 41:13
**$40,000** [1] - 42:15
**$43,000** [1] - 34:22
**$45,000** [2] - 13:20; 34:22
**$46,000** [1] - 34:11
**$50** [1] - 41:14
**$72,000** [1] - 13:19
**$76,000** [1] - 34:10
**$9,930** [1] - 47:23

## '

**'06-'07** [2] - 35:1; 48:7

## 0

**07-CR-587(CBA** [1] - 1:3
**08-CR-0086(CBA** [1] - 1:11

## 1

**1.8** [2] - 54:18; 55:4
**10** [2] - 12:20
**101** [1] - 2:2
**10th** [5] - 21:19; 44:3, 13, 22; 47:16
**11** [1] - 10:25
**1100** [1] - 2:6
**11201** [1] - 1:23
**11:00** [1] - 1:8
**1286** [1] - 53:9
**14** [1] - 2:9
**14th** [3] - 9:2, 7, 21
**1500** [1] - 2:6
**16** [1] - 45:18
**16th** [4] - 44:13, 22; 47:16; 50:16
**18** [1] - 28:10
**18-page** [1] - 5:10
**18th** [3] - 9:24; 10:5, 21
**19** [1] - 30:21
**19063** [1] - 2:9
**19102** [1] - 2:7

## 2

**2** [2] - 1:7; 41:20
**2003** [5] - 47:9, 25; 49:23; 50:2; 52:19
**2003-2004** [1] - 47:1
**2003-2006** [1] - 39:15
**2004-2005** [1] - 47:1
**2005-2006** [1] - 47:1
**2006** [4] - 50:1, 11; 51:1, 3
**2006-2007** [5] - 13:19; 46:13; 47:1, 13; 50:13

**2007** [4] - 11:18,    4; 48:1
**2008** [6] - 1:7, 15; 12:20; 44:4; 57:14
**209** [1] - 53:9
**24** [1] - 57:14
**24th** [1] - 10:23
**271** [1] - 1:23
**28th** [1] - 44:3
**29th** [1] - 10:24
**2nd** [2] - 11:17; 12:3

## 3

**3100** [1] - 2:3
**33602** [1] - 2:3
**3664** [1] - 53:18

## 4

**40** [1] - 42:4
**46** [1] - 34:13

## 5

**5** [2] - 5:5; 26:22
**5:30** [1] - 5:10
**5K** [4] - 15:19; 18:8; 22:6, 15
**5K1** [1] - 18:9

## 6

**613-2487** [1] - 2:16
**613-2694** [1] - 2:17

## 7

**7/14** [1] - 14:4
**7/24** [1] - 14:12
**718** [2] - 2:16
**72** [2] - 34:12

## 8

**8:30** [1] - 5:7

## 9

**9** [1] - 1:15
**9:30** [4] - 1:16; 10:23; 14:12; 57:14

## A

**a.m** [4] - 1:8, 16; 10:25; 57:14
**ability** [1] - 8:20
**able** [2] - 4:22, 24
**above-entitled** [1] - 57:18
**absolutely** [6] - 15:7; 21:4; 22:12, 24; 23:4; 28:17

**Absolutely** [2] - 12:16; 13:6
**accept** [1] - 40:23
**accepting** [1] - 33:14
**accompanied** [1] - 36:22
**accountable** [3] - 44:18, 20; 46:20
**accounting** [1] - 12:11
**accuracy** [1] - 16:12
**act** [1] - 50:22
**Act** [2] - 6:7; 53:21
**acting** [1] - 50:23
**action** [2] - 27:18; 42:22
**activities** [1] - 25:13
**activity** [8] - 19:4; 25:4; 51:3, 15; 54:11; 55:8, 14, 18
**acts** [1] - 6:20
**actual** [1] - 35:12
**add** [1] - 41:22
**addition** [3] - 6:13; 47:23; 52:16
**additional** [8] - 14:9; 16:5; 18:13; 19:24; 20:3; 30:10; 41:5; 45:20
**additionally** [1] - 9:10
**additions** [1] - 34:17
**address** [6] - 9:1, 14; 11:2; 40:5; 52:22; 54:8
**Address** [1] - 9:2
**addressed** [3] - 42:2; 43:16, 18
**addressing** [2] - 9:3; 36:6
**adds** [1] - 42:8
**adequately** [1] - 43:16
**adjourned** [1] - 57:13
**adjournment** [2] - 5:20
**advise** [1] - 17:11
**affects** [1] - 44:4
**affidavit** [3] - 44:11; 45:17
**affidavits** [10] - 26:18-20, 25; 27:4; 29:8; 31:21, 23; 32:17; 47:19
**afield** [1] - 20:16
**agenda** [1] - 14:20
**agent** [5] - 19:17; 22:11; 23:2
**Agent** [5] - 14:21, 24; 23:2; 24:19
**agents** [2] - 23:10, 12
**agree** [2] - 26:19; 34:7
**agreed** [1] - 19:9
**agreement** [5] - 16:10; 22:23; 23:21; 33:24; 56:5
**agrees** [1] - 8:14
**aided** [1] - 2:19
**ALEXANDER** [1] - 1:24
**Alexander** [1] - 3:12
**allegation** [1] - 49:17
**allegations** [2] - 21:24; 56:11
**allocution** [2] - 6:21; 7:23
**allow** [1] - 52:21
**allowing** [1] - 39:8
**allows** [1] - 32:14
**almost** [1] - 49:7
**alternative** [1] - 8:21
**alternatively** [1] - 8:16
**AMERICA** [2] - 1:3, 11
**AMON** [2] - 1:19; 3:5
**amount** [5] - 18:22; 22:21; 44:5, 17; 53:1

2

**amounts** [2] - 42:1, 7
**analysis** [2] - 27:25; 28:3
**Anders** [6] - 28:9; 29:19, 24; 30:14; 44:16; 45:17
**Anders's** [1] - 29:22
**answer** [8] - 39:21; 40:8; 43:1; 51:10; 53:17; 54:3, 19; 55:22
**Anthony** [2] - 2:15; 57:22
**Anthony_Frisolone@nyed.uscourts.gov** [1] - 2:17
**anticipated** [1] - 32:3
**appeal** [1] - 36:24
**Appeals** [1] - 35:21
**appear** [1] - 3:25
**appearance** [1] - 4:7
**appearances** [1] - 3:11
**Appearing** [2] - 2:10
**applicable** [1] - 30:25
**applied** [2] - 12:4
**applies** [1] - 6:10
**apply** [1] - 55:4
**apportion** [4] - 48:20; 52:5, 19; 54:2
**apportioned** [1] - 52:10
**apportionment** [2] - 52:25; 53:12
**approach** [1] - 36:18
**appropriate** [5] - 8:18; 26:12; 33:3; 52:17, 23
**April** [10] - 12:20; 30:18; 44:3, 13, 22; 47:16
**areas** [1] - 56:3
**argue** [1] - 37:4
**ARGUMENT** [1] - 1:18
**argument** [5] - 4:7; 8:17; 31:11; 49:13; 51:11
**arguments** [5] - 13:24; 14:2; 38:13; 45:9; 46:9
**Arkin** [2] - 29:13; 41:9
**articulating** [1] - 52:1
**assess** [2] - 46:10; 52:14
**assessment** [6] - 16:11; 23:1, 23; 32:9, 19; 34:7
**assignable** [1] - 44:25
**assigned** [1] - 44:6
**assistance** [3] - 16:9; 37:22; 45:4
**Assistant** [1] - 1:25
**Assistants** [1] - 23:4
**assisting** [2] - 24:24; 26:8
**associated** [3] - 26:6; 44:14; 47:12
**Association** [2] - 2:11; 3:22
**assume** [3] - 18:18; 47:8; 50:18
**assuming** [1] - 26:1
**attempt** [1] - 30:19
**attend** [4] - 25:19; 38:20; 39:8; 40:21
**Attendance** [1] - 38:23
**attention** [7] - 18:5; 44:9; 45:9; 52:4; 55:11, 17, 25
**Attorney** [4] - 1:22; 2:2, 5, 8
**attorney's** [1] - 38:9
**attorneys** [2] - 12:1; 38:19
**Attorneys** [1] - 1:25
**attributable** [1] - 45:13
**August** [2] - 29:22; 30:2

**authority** [2] - 22 :5
**award** [1] - 38:15
**aware** [3] - 8:12; 43:20; 50:3

## B

**backward** [1] - 50:9
**backwards** [1] - 51:14
**BAGLEY** [2] - 1:19; 3:5
**bare** [1] - 28:22
**base** [1] - 34:17
**based** [4] - 7:23; 24:7, 9; 32:18; 33:8; 37:14; 38:15; 47:5, 21; 52:6, 10, 20; 53:4
**basis** [9] - 6:16; 7:13; 15:7; 22:24; 23:11, 15, 19; 27:14
**Basketball** [2] - 2:11; 3:22
**Batista** [3] - 3:10
**Batista's** [1] - 8:5
**BATTISTA** [1] - 1:15
**Battista** [21] - 2:5; 3:3; 9:16; 10:3, 11, 22; 11:1, 12; 12:5, 19, 22, 25; 13:1; 19:4, 9; 39:3; 44:6, 25; 45:13; 50:5, 22
**Battista's** [3] - 6:6; 46:6; 47:15
**beats** [1] - 37:4
**became** [1] - 8:12
**becomes** [1] - 50:15
**BEFORE** [1] - 1:19
**begins** [1] - 50:15
**behalf** [3] - 3:14, 16; 13:9
**belief** [1] - 48:23
**believes** [1] - 24:9; 52:17
**bench** [1] - 3:5
**benefits** [2] - 13:21; 35:13
**Bentley** [1] - 31:5
**BENTON** [1] - 1:21
**better** [2] - 19:5; 35:5
**betting** [2] - 54:11; 55:18
**between** [9] - 19:3; 21:22; 23:6; 25:23; 35:12; 44:3, 22; 47:16; 48:17
**beyond** [1] - 18:10
**billing** [1] - 28:9
**billings** [1] - 29:12
**bills** [2] - 25:25; 26:6
**binding** [2] - 16:12; 23:24
**bit** [1] - 35:4
**block** [1] - 32:6
**Block's** [1] - 41:21
**blown** [1] - 16:4
**bones** [1] - 28:22
**Booker** [1] - 16:24
**borne** [3] - 11:20; 12:9; 13:1
**bottom** [1] - 23:20
**Boulevard** [1] - 2:2
**bounds** [1] - 37:22
**boxes** [1] - 27:11
**Brandon** [2] - 2:12; 3:13
**break** [4] - 12:7, 10; 13:2; 36:17
**breakdown** [1] - 14:9
**brief** [1] - 5:3
**briefed** [1] - 10:21

**briefing** [3] - 6:4; 8:25; 9:25
**briefly** [2] - 39:11
**bring** [2] - 45:8; 52:3
**broader** [1] - 51:25
**Brock** [1] - 7:16
**broken** [2] - 28:6; 30:1
**Brooklyn** [3] - 1:5, 13, 23
**brought** [4] - 18:4; 44:9; 55:17, 24
**Bruno** [3] - 16:24; 22:14
**building** [2] - 14:25; 15:1
**burden** [2] - 32:2; 33:13
**BY** [2] - 1:24; 2:4

## C

**Cadman** [1] - 1:23
**calculation** [3] - 11:19; 35:3; 43:8
**CAMPBELL** [1] - 1:21
**candid** [2] - 15:21; 20:7
**carefully** [1] - 34:5
**CAROL** [2] - 1:19; 3:5
**carry** [1] - 17:2
**carved** [1] - 17:6
**case** [43] - 4:4; 5:18; 6:10, 17; 7:4, 11, 15; 8:5; 9:10; 10:19; 12:20; 14:4; 16:21; 17:21; 19:17; 20:15; 22:2, 10, 14; 23:3; 26:1; 30:22; 34:8; 35:10, 12; 36:18, 23; 37:14; 38:1, 7-8; 40:6, 10, 25; 43:4; 49:12, 15, 21; 51:21; 53:6, 8
**cases** [4] - 18:13; 22:19; 35:11
**catches** [1] - 51:13
**CAUSE** [1] - 1:18
**certain** [1] - 48:10
**certainly** [11] - 8:2; 10:8; 27:17; 28:16; 31:14, 20; 45:14; 50:12, 17; 51:7; 54:4
**CERTIFICATE** [1] - 57:17
**certify** [1] - 57:18
**cetera** [1] - 8:20
**chance** [1] - 53:7
**charge** [2] - 32:23; 33:16
**charged** [4] - 7:5; 46:13; 51:8, 13
**charges** [4] - 44:11, 22; 45:8
**chart** [1] - 28:6
**chiropractor** [2] - 49:20
**circumstance** [2] - 53:22; 54:2
**circumstances** [6] - 10:15; 52:6, 11, 21; 53:20; 54:1
**cite** [1] - 40:24
**cited** [4] - 7:9, 16; 30:21; 52:4
**cites** [1] - 22:14
**civil** [2] - 38:10; 42:22
**claim** [3] - 43:1; 49:16
**claimed** [1] - 44:14
**claims** [1] - 13:20
**clarify** [3] - 6:4; 21:14; 24:22
**clear** [5] - 19:13; 30:20; 32:5; 56:14, 18
**clearly** [6] - 25:20; 30:19; 32:7; 49:25; 57:4
**client** [9] - 4:6, 11; 10:12; 11:2, 11; 24:5; 46:19; 47:2
**co** [1] - 48:17

3

**co-conspirators** [1] - 48:17
**collar** [1] - 38:4
**collateral** [3] - 25:21
**comment** [5] - 10:4, 12; 53:15; 54:4
**commentary** [2] - 18:9; 19:24
**comments** [1] - 37:1
**commingled** [1] - 12:8
**Commissioner** [1] - 40:15
**committed** [2] - 6:23; 7:6
**communicate** [1] - 38:2
**communicating** [1] - 37:25
**Company** [1] - 48:16
**Compensable** [1] - 40:8
**compensable** [11] - 25:6, 13, 15; 27:17; 28:12, 24; 29:21; 30:5; 33:14, 19; 40:22
**compensated** [1] - 40:13
**compensation** [2] - 31:25; 34:14
**complaint** [1] - 31:20
**complete** [3] - 10:2; 16:18; 22:19
**completely** [1] - 15:21; 48:11, 22
**completeness** [2] - 16:12; 23:24
**complied** [1] - 16:10
**comprehensive** [4] - 4:23; 9:20
**Computer** [1] - 2:19
**Computer-aided** [1] - 2:19
**computerized** [1] - 2:18
**Concannon** [7] - 50:7, 21; 51:3; 54:22; 55:3, 15; 56:7
**Concannon's** [1] - 55:21
**concede** [3] - 25:8; 55:24
**conceded** [2] - 44:7; 47:23
**concept** [1] - 31:1
**concern** [2] - 24:4; 46:17
**concerned** [1] - 9:25
**concerning** [1] - 16:25
**conclusion** [2] - 27:15; 34:3
**condition** [1] - 8:2
**conduct** [3] - 6:15; 7:13; 54:12
**Conduct** [1] - 8:9
**conference** [1] - 12:19
**confirmed** [1] - 21:1
**conform** [1] - 30:19
**connected** [1] - 26:7
**connection** [3] - 10:19; 17:21; 37:15
**consequence** [1] - 51:1
**consequential** [1] - 25:21
**consider** [5] - 6:19; 8:19; 22:16; 53:19; 54:2
**consideration** [2] - 53:22; 54:1
**consisted** [1] - 47:25
**consistent** [2] - 7:14; 25:1
**conspiracy** [3] - 49:11; 51:8, 13
**conspirators** [1] - 48:17
**construe** [1] - 7:24
**construed** [1] - 7:3
**contest** [2] - 17:15; 26:13
**contesting** [1] - 25:24
**context** [4] - 18:17; 38:10; 45:4; 51:23
**continuing** [1] - 39:20
**conviction** [5] - 6:16, 18; 7:14, 24
**cooperated** [2] - 16:9; 24:11

**cooperating** [2] - 22:25
**cooperation** [19] - 15:20; 16:6, 22, 25; 17:5, 12, 21-22, 25; 18:17, 22; 19:25; 20:22; 21:4; 22:5, 23; 54:17; 56:5, 15
**cooperator** [2] - 23:7
**coordinating** [2] - 45:19, 25
**copy** [1] - 41:21
**correct** [6] - 25:1; 41:15; 43:19; 51:7; 52:9; 57:18
**Correct** [4] - 30:25; 45:5; 46:22
**correction** [2] - 11:5; 12:18
**corrections** [3] - 11:14; 13:3; 14:10
**correctly** [3] - 7:7; 11:16; 12:4
**corroborate** [1] - 23:8
**corroborated** [6] - 18:12; 21:1, 5, 7; 22:3, 10
**corroboration** [3] - 18:25; 20:4, 6
**cost** [4] - 11:19; 13:19; 24:24; 37:21
**costs** [33] - 11:20; 12:1, 8-9, 21; 13:1, 18; 25:1, 3, 5, 14, 20; 26:6, 10; 27:15; 35:18; 36:16; 37:10; 38:13; 39:18; 45:4; 46:3, 10, 13, 15, 21; 47:12, 14; 48:11; 51:23; 52:16, 18
**Counsel** [1] - 5:12
**counsel** [3] - 11:15; 13:5; 17:10
**count** [1] - 6:25
**Count Two** [1] - 6:19
**couple** [1] - 43:25
**course** [2] - 36:9; 44:6
**COURT** [152] - 1:1; 3:6, 17, 19, 23; 4:6, 10, 17, 22; 5:12, 15, 20, 24; 6:3, 12, 22, 25; 7:4, 17; 8:4, 7, 10, 16, 24; 9:6, 10, 20, 23; 10:7; 11:6, 8, 10, 25; 12:14, 17; 13:4, 7, 12; 14:1, 6, 11, 13, 15, 18, 24; 15:1, 3, 12; 16:15; 17:19; 19:5, 22; 20:6, 10, 19; 21:7, 16; 23:11, 15, 19; 25:2, 8, 22; 26:4, 14, 17; 27:21, 25; 28:13, 18; 29:5; 30:23; 31:11, 15, 22; 32:24; 33:1, 20; 34:3, 7, 10, 13, 19, 25; 35:6, 19, 24; 36:1, 3, 6, 10; 37:1, 7, 13, 19; 38:6, 17, 23; 39:10; 40:5, 18, 20; 41:1, 4, 7, 17, 19, 25; 42:3, 10, 17, 21; 43:9, 12, 15, 21; 44:1, 17, 20, 23; 45:1; 46:17; 47:3; 48:5, 23; 49:1; 50:3; 51:2, 5, 9, 17, 19; 52:2, 25; 53:8, 11; 54:5, 7, 14, 20, 23; 55:5, 7, 10, 13, 16; 56:8, 18, 21, 23; 57:1, 10
**Court** [58] - 2:15; 3:15; 8:19; 9:7; 10:17; 11:17; 14:19; 15:5; 16:3, 17, 23; 17:8, 11; 18:5, 9; 19:7, 23; 21:9; 22:13, 15, 17, 19; 28:19, 22; 31:3; 32:8, 10, 14; 34:3; 35:20; 38:20; 39:14, 16; 40:6; 41:3; 43:24; 44:2, 9; 45:11, 14; 46:2, 6, 14; 47:20; 48:2, 17; 50:24; 52:5, 9, 17, 21-22; 53:15; 56:11, 14; 57:22
**court** [6] - 3:1, 3; 5:6, 8; 22:15; 32:18
**Court's** [9] - 15:15; 18:5; 34:7; 35:17, 23; 38:11, 14; 45:9; 52:4
**Courthouse** [1] - 1:5, 13
**COURTROOM** [1] - 3:9
**courtroom** [1] - 4:5
**courts** [1] - 30:20
**covered** [3] - 6:6, 9; 49:18

**covers** [1] - 49:5
**credibility** [1] - 15:25
**credible** [1] - 18:19
**credit** [1] - 21:2
**crediting** [1] - 18:22
**CRI** [2] - 2:15; 57:22
**crime** [4] - 6:6, 13; 7:5; 40:12
**CRIMINAL** [1] - 1:18
**criminal** [2] - 38:1
**critical** [1] - 40:16
**crucial** [1] - 17:13
**CSR** [2] - 2:15; 57:22
**curtail** [1] - 38:15
**Cutrell** [2] - 53:6, 9

---

# D

**date** [4] - 9:7; 14:11; 50:16; 52:19
**dates** [1] - 14:7
**Davis** [1] - 7:16
**days** [2] - 12:25; 29:9
**deal** [3] - 19:3; 49:23; 56:7
**dealing** [3] - 44:12; 45:7, 23
**deals** [4] - 4:11; 34:14; 41:9; 46:25
**dealt** [2] - 44:2; 46:18
**debriefings** [1] - 55:21
**deceit** [10] - 6:13, 17, 23; 7:1, 10, 19-20; 8:2; 9:12
**December** [2] - 50:1, 16
**decision** [4] - 30:22-24; 48:13
**declined** [1] - 22:14
**deems** [1] - 16:19
**defend** [1] - 36:24
**Defendant** [7] - 1:8, 17; 2:1, 5, 8; 3:3
**defendant** [9] - 16:13; 17:25; 22:25; 23:22; 47:22; 52:6; 53:21, 23
**defendant's** [1] - 16:25
**defendants** [7] - 8:9; 10:18; 11:14, 21; 12:10; 16:8; 53:19
**Defendants** [1] - 3:2
**defending** [1] - 35:20
**defense** [2] - 15:14; 17:10
**defer** [1] - 55:23
**deference** [1] - 14:22
**definitely** [1] - 55:20
**degree** [2] - 18:12; 32:13
**demarcated** [1] - 30:20
**deny** [2] - 15:5; 24:19
**Department** [1] - 2:12
**DEPUTY** [1] - 3:9
**detail** [9] - 17:20; 30:1, 15; 31:24; 33:11; 39:19; 49:8; 55:2, 15
**detailed** [1] - 15:19
**detailing** [1] - 15:22
**details** [1] - 18:1
**determination** [4] - 16:8; 23:21; 31:3
**determine** [9] - 28:24; 32:14; 33:14; 45:11; 46:7; 47:12, 14, 21; 53:1
**determines** [1] - 52:22
**determining** [1] - 33:18
**detrimental** [1] - 24:5

**devoted** [1] - 27:9
**difference** [4] - 12:22; 21:22; 23:6; 25:23
**different** [4] - 8:7; 20:14; 49:19; 57:2
**difficult** [1] - 45:11
**direct** [3] - 25:4; 48:15; 51:12
**directed** [1] - 4:12
**direction** [1] - 29:24
**directly** [4] - 44:14; 49:3, 24; 54:15
**disadvantage** [1] - 35:4
**disagree** [1] - 11:21
**disagreement** [1] - 15:18
**discovery** [2] - 47:4; 48:3
**discrepancy** [1] - 53:16
**discretion** [7] - 16:18; 18:6; 22:19, 21; 35:17, 23; 38:14
**discretionary** [1] - 38:12
**discuss** [1] - 15:8
**discussion** [3] - 15:9; 16:4; 49:13
**disingenuous** [1] - 24:13
**disparity** [1] - 19:3
**dispute** [3] - 42:11, 22
**disputed** [1] - 19:7
**disputing** [2] - 20:8; 21:11
**dissatisfied** [1] - 23:1
**distinguish** [1] - 49:15
**DISTRICT** [3] - 1:1, 19
**district** [2] - 22:15; 39:22
**District** [1] - 22:15
**divide** [1] - 53:2
**doctor** [1] - 49:19
**document** [15] - 5:10; 11:18, 24; 27:9; 28:20; 29:12, 14, 21; 30:10, 13; 32:11, 18; 46:18; 48:24; 49:5
**documents** [26] - 25:18; 26:5; 27:5, 10-12; 28:21; 29:11, 25; 30:11, 18; 33:6; 37:15; 39:25; 40:2; 45:14, 19-20; 46:12, 23; 47:6; 48:4; 49:1, 4
**dollar** [1] - 29:1
**dollars** [4] - 12:11, 23; 27:9; 42:4
**DONAGHY** [1] - 1:7
**Donaghy** [38] - 2:2; 3:2, 9, 14; 10:1; 11:18; 12:5; 13:10; 15:24; 17:7, 13; 18:20; 20:5, 24; 21:1, 17, 22; 23:9; 24:9; 25:5, 11, 13; 26:9; 30:11; 33:25; 42:8; 50:4, 21; 52:13; 55:1, 3, 11, 15-16, 24; 56:4, 13
**Donaghy's** [15] - 10:24; 15:20; 16:22; 17:4; 18:17; 19:11, 25; 20:22; 21:4; 34:14; 39:2; 54:11, 17; 56:11, 15
**done** [15] - 5:19; 12:11; 20:1; 27:1, 25; 28:5; 31:9, 12-13; 32:15; 33:10; 34:16; 37:18; 53:25
**down** [3] - 28:6; 30:1; 49:8
**draw** [3] - 27:14; 32:8, 19
**draws** [1] - 35:10
**due** [1] - 22:17
**duplicative** [3] - 29:3, 5
**during** [4] - 11:17; 27:20; 30:14; 50:21

**E-mail** [1] - 2:17
**e-mails** [2] - 45:24
**earliest** [1] - 50:16
**earned** [1] - 42:25
**easily** [1] - 45:22
**East** [2] - 1:23; 2:2
**EASTERN** [1] - 1:1
**Eastern** [1] - 1:22
**economic** [7] - 52:6, 11, 21; 53:20, 22; 54:1
**effect** [1] - 50:19
**efforts** [1] - 40:2
**eight** [1] - 12:25
**either** [4] - 20:25; 28:4; 35:24; 39:1
**eliminating** [1] - 36:19
**employees** [2] - 25:10; 35:5
**employer** [1] - 35:14
**end** [4] - 13:23; 24:5; 44:7
**ending** [1] - 20:14
**engaged** [1] - 55:17
**engaging** [1] - 50:6
**enlists** [1] - 50:23
**entertain** [1] - 16:4
**entire** [1] - 53:1
**entirely** [1] - 20:14
**entitled** [13] - 18:9; 22:7, 16; 24:23; 25:1; 29:1; 31:5, 24; 42:8, 12, 25; 57:18
**entries** [8] - 26:19-21, 23; 27:1; 32:6; 45:21; 47:21
**entry** [3] - 31:15; 38:17; 51:16
**entrée** [2] - 50:4
**envisioning** [1] - 15:13
**equally** [1] - 52:14
**error** [1] - 8:2
**especially** [1] - 51:14
**ESQ** [6] - 1:21, 24; 2:4, 8
**Esq** [1] - 2:10
**estimate** [2] - 13:23; 34:23
**et** [1] - 8:20
**event** [1] - 18:4
**evidence** [2] - 50:12; 51:20
**exact** [1] - 12:11
**exacting** [1] - 36:13
**exactly** [4] - 20:19; 22:8; 29:8; 47:21
**Exactly** [1] - 48:25
**exaggerated** [1] - 20:23
**examination** [1] - 56:3
**example** [7] - 25:9; 27:8; 28:9; 29:5; 31:8; 32:21; 35:14
**examples** [1] - 26:23
**excessive** [1] - 38:14
**excluded** [1] - 48:12
**Excuse** [1] - 11:6
**excuse** [2] - 23:22; 49:20
**executives** [2] - 28:10
**exhibits** [1] - 37:21
**existence** [2] - 55:12, 14
**exists** [1] - 8:3
**expedition** [1] - 24:3

**expenses** [2] - 35:13; 46:6
**experience** [1] - 17:24
**explain** [5] - 26:19, 21, 25; 27:1; 28:6
**explains** [1] - 45:18
**explanation** [1] - 31:17
**explanations** [1] - 31:17
**exploring** [1] - 24:2
**extent** [14] - 8:1; 9:15; 16:21; 17:11; 18:11; 19:25; 20:24; 22:5; 25:3, 12; 26:11; 55:2, 7
**extraordinary** [1] - 17:9
**extravagant** [1] - 39:20

**F**

**F.3d** [1] - 53:9
**Facsimile** [1] - 2:17
**fact** [11] - 4:4; 5:5; 7:18; 16:3; 18:23; 23:9; 25:25; 45:13; 50:3; 52:12, 18
**factors** [3] - 8:20; 16:20; 22:6
**facts** [1] - 19:6
**factual** [2] - 19:13; 54:7
**factually** [2] - 51:5; 55:8
**Fair** [1] - 56:25
**fair** [1] - 52:23
**fairly** [1] - 36:18
**fairness** [2] - 36:17; 56:1
**faith** [8] - 16:7, 11; 20:3; 23:1, 21, 23; 24:1, 17
**fall** [1] - 39:9
**false** [1] - 17:16
**far** [3] - 9:25; 20:15; 51:20
**fashion** [1] - 4:23
**favor** [1] - 43:5
**fax** [1] - 14:9
**FCRR** [2] - 2:15; 57:22
**federal** [2] - 23:10, 12
**fee** [1] - 31:4
**fees** [4] - 30:24; 31:1; 38:9; 41:9
**felt** [1] - 24:15
**few** [1] - 12:23
**figure** [4] - 26:14; 35:24; 41:11; 43:11
**figures** [3] - 34:13; 41:13; 52:9
**file** [2] - 22:15; 27:11
**filed** [6] - 4:13; 5:7, 11; 9:24; 15:19, 23
**financial** [1] - 8:20
**fine** [2] - 6:2; 14:10
**finishing** [1] - 5:18
**FIRM** [1] - 2:1
**firm** [4] - 29:13, 22; 37:18; 41:9
**firms** [1] - 31:5
**first** [1] - 5:10; 14:22; 16:17; 33:23; 34:21; 54:25; 55:11, 13, 16, 18; 56:2
**First** [1] - 29:7
**fishing** [1] - 24:2
**five** [4] - 28:2; 30:15, 17; 33:6
**flag** [1] - 13:24
**Florida** [1] - 2:3
**Fogel** [6] - 11:19; 12:21; 48:13; 49:11
**folder** [1] - 27:11
**Following** [1] - 56:6

5

following [1] - 6:2
foolishness [1] - 49:10
FOR [1] - 1:18
foregoing [1] - 57:18
foreseeability [1] - 49:24
foreseeable [2] - 51:1, 12
foreseen [2] - 49:22, 25
forth [7] - 17:20; 19:11, 15; 21:18;
22:20; 36:13; 37:12
forward [5] - 10:23; 14:20; 43:1; 48:15
forwards [1] - 51:14
four [4] - 25:16; 28:1; 41:1
fours [1] - 38:8
frames [1] - 49:14
frankly [3] - 24:4; 33:11; 35:16
fraud [14] - 6:13, 17, 23; 7:1, 10,
19-20; 8:2; 9:12; 38:4; 49:12, 17
Friday [1] - 14:5
fringe [2] - 13:21; 35:13
Frisolone [1] - 2:15; 57:22
front [1] - 44:7
full [6] - 16:4; 17:11; 18:17; 19:25;
21:2; 44:5
full-blown [1] - 16:4
fully [4] - 10:17, 21; 16:9; 53:17
fundamentally [1] - 31:21
future [1] - 10:19

## G

gambling [1] - 51:15
game [10] - 17:14; 18:20; 20:25; 34:16;
47:24; 48:5; 56:12, 17
games [1] - 47:25
Gee [1] - 46:5
generalized [1] - 32:17
genesis [1] - 50:8
goal [1] - 39:7
goals [1] - 7:15
GOLDBERG [71] - 1:24; 3:7, 12; 6:9,
15, 24; 7:2, 11, 21; 8:6, 23; 9:9; 11:4,
13; 12:1, 16, 18; 13:6, 15; 14:17, 19,
25; 15:2, 4; 21:14, 17; 22:12; 34:2, 6, 9,
12, 18, 21; 35:1, 9, 22, 25; 36:5, 8, 11;
37:6, 9, 17, 20; 38:10, 21; 39:4; 43:14;
45:3, 6; 48:7, 25; 49:4; 51:7, 10, 18, 21;
53:14; 54:13, 18, 21, 24; 55:6, 9, 12,
14, 20; 56:22, 25; 57:9, 11
Goldberg [10] - 3:12; 7:18; 11:11;
14:8; 21:13; 33:20; 37:2; 38:6, 18; 51:6
good-faith [5] - 16:7, 11; 23:1, 21, 23
government [3] - 25:11; 30:15, 17
Government [79] - 1:21; 3:13; 8:21;
9:6, 17, 24; 11:3, 23; 12:3; 13:12, 22;
14:21; 15:19, 24; 17:2, 6, 14, 17, 20;
18:16, 18, 21; 19:9; 20:1, 23; 21:8, 12,
18; 22:14, 22; 23:7, 25; 24:8, 24; 25:20;
26:5, 9, 13; 28:11, 23, 25; 30:3; 37:2, 4,
16, 25; 38:2, 19, 25; 39:6; 40:1; 41:11;
42:14; 43:6; 44:4, 10; 45:4, 12; 46:3,
24; 47:8, 15; 49:21; 50:17; 51:12, 24;
52:4; 53:11; 54:16; 55:18, 21; 56:6, 16;
57:5
Government's [21] - 4:3; 5:3, 10; 6:5;
8:15; 16:6; 20:22; 21:3; 23:1; 33:11, 13;
34:19; 38:7; 39:1, 25; 42:17; 43:12;
44:21; 49:10; 54:9; 55:10
grant [1] - 5:21
great [2] - 17:20; 56:7
guess [5] - 44:8; 45:8; 46:1; 47:11;
50:10
guidelines [1] - 34:23
guilty [4] - 12:24; 25:5; 30:11; 47:2
guy [1] - 5:4

## H

halfway [1] - 4:3
handled [1] - 29:22
hard [3] - 29:8; 39:19; 47:20
harm [1] - 6:11
harmful [1] - 40:12
hear [13] - 3:18; 16:18, 24; 18:9; 19:24;
22:7, 10; 33:20; 35:8; 36:10; 39:25;
56:23
heard [7] - 14:6, 8, 11; 16:14; 33:21;
39:11; 43:22
hearing [2] - 24:18; 42:14
heaven [1] - 57:3
held [4] - 9:16; 44:18; 46:20
help [1] - 57:3
helpful [1] - 24:6
Herr [10] - 3:16; 4:22; 12:18; 13:25;
43:22; 45:3; 48:9; 51:11; 52:1; 53:19
HERR [18] - 2:8; 3:16; 43:23; 44:2, 19,
21, 24; 45:2, 5, 7; 46:23; 47:5; 49:9;
50:10; 51:4; 52:3; 53:5, 9
Herr's [1] - 13:14
higher [2] - 43:3, 8
himself [2] - 54:22; 56:17
hindsight [1] - 49:8
hire [1] - 26:4
hold [2] - 9:17; 21:24
holding [1] - 48:14
holiday [1] - 4:15
homicide [1] - 4:3
honest [4] - 13:18; 18:19; 35:11; 45:6
Honor [56] - 3:20; 4:2, 9; 6:24; 7:11;
8:8, 23; 9:9, 22; 10:6; 11:13; 14:3,
16-17; 15:6; 16:14, 17-18; 17:3; 18:8;
19:21; 20:18; 21:2; 22:1, 3, 6, 10, 12;
23:6; 27:3; 28:6, 15; 32:1, 9, 16; 33:5;
34:9; 35:16, 22; 36:11, 15; 37:6, 12, 17;
38:12; 41:24; 42:14; 43:2, 23; 47:23;
49:9; 53:10; 56:1, 10, 20; 57:9
Honor's [1] - 43:8
HONORABLE [1] - 1:19
hours [12] - 25:16; 27:18; 28:10;
29:19; 30:15, 17; 45:18
Hughey [1] - 7:12

## I

idea [2] - 27:19; 29:23
identifiable [2] - 6:10; 7:8
identified [3] - 36:20; 39:24; 42:15
identify [10] - 8:1; 28:7, 16, 19; 29:8,
10-11; 31:2; 32:7; 56:9
identifying [1] - 29:15
imagine [2] - 42:10; 56:2
impact [1] - 18:14
impacts [2] - 10:4; 11:13
implicit [1] - 31:20
important [5] - 16:20; 18:15; 21:14,
20; 40:11
importantly [1] - 39:14
impose [1] - 53:25
imposed [1] - 8:22
impossible [2] - 33:4; 49:8
inappropriate [1] - 40:20
incapable [1] - 19:14
inclined [1] - 24:18
include [2] - 35:17; 45:14
included [2] - 42:5; 54:11
including [1] - 39:14
incorporated [1] - 6:20
incorrect [2] - 17:16; 51:6
incurred [4] - 12:1, 22; 35:13; 51:23
Indeed [1] - 34:9
independently [1] - 46:7
indicate [5] - 9:7; 13:2; 15:13; 54:21,
24
indicated [7] - 11:20; 12:4, 19; 15:20;
18:6; 37:10
indicative [1] - 47:17
indictment [2] - 6:19; 7:22
individual [4] - 23:2, 4; 52:20; 55:13
individuals [1] - 49:12
inform [1] - 39:6
information [45] - 15:24; 16:1, 4, 18,
25; 17:4, 13, 19, 23; 18:1, 4, 9, 11-12,
15, 19-20; 19:1, 6, 18; 20:4, 25; 22:16;
23:7, 9; 24:13, 15; 27:13; 28:21; 32:10;
33:9, 12; 36:23; 50:22; 54:10, 15-16;
55:3, 8; 56:7, 15
informed [4] - 11:15; 21:18; 54:22, 25
informs [1] - 12:12
initiation [1] - 51:8
inquired [1] - 12:3
inside [1] - 37:18
instance [1] - 25:10
instances [3] - 25:16, 19; 27:24
Instead [3] - 17:6; 28:25; 32:16
instead [1] - 31:9
Insurance [1] - 48:16
intend [1] - 13:7
intended [1] - 35:2
interest [1] - 39:4
interview [1] - 30:8
interviewed [2] - 27:6, 16
interviews [3] - 25:19; 27:20
inverse [1] - 48:21

**investigation** [7] - 18:14, 25; 26:7; 39:1; 49:23; 50:1; 51:24
**investigative** [2] - 39:4, 18
**involved** [9] - 7:20; 40:2; 46:19; 49:3, 12, 17-18; 50:15; 56:17
**involves** [1] - 49:12
**involving** [2] - 39:2; 49:19
**isolated** [1] - 46:11
**issue** [32] - 4:10; 6:3, 5; 7:18; 10:9; 13:15, 18; 14:21; 15:25; 16:13; 19:12, 16; 21:17; 25:7; 26:13; 28:15; 33:23; 34:20; 39:15, 18; 41:24; 42:6, 21; 43:3; 53:12; 54:18; 56:8, 22, 24
**issued** [1] - 11:23
**issues** [21] - 9:2, 14; 10:1, 5, 16-17, 21; 13:8; 15:10, 17, 22; 19:2; 24:20; 28:16; 33:24; 36:4; 37:3; 43:17, 25; 57:8
**item** [3] - 28:7; 35:2; 36:19
**items** [1] - 36:19
**itself** [4] - 7:5; 9:12; 48:13; 49:5

## J

**JACK** [1] - 2:5
**JAMES** [1] - 1:15
**Jeffrey** [1] - 3:12
**JEFFREY** [1] - 1:24
**JOHN** [1] - 2:4
**John** [1] - 3:14
**JUDGE** [1] - 1:19
**Judge** [7] - 3:5; 5:19; 36:25; 39:9, 12; 40:23; 42:20
**July** [8] - 1:7, 15; 10:23; 11:17; 12:3; 29:19; 57:13
**jumped** [1] - 37:22
**June** [3] - 21:19; 29:12, 18
**jury** [1] - 4:3

## K

**keep** [1] - 40:10
**Kennedy** [1] - 2:2
**kind** [4] - 19:24; 23:5; 28:2; 44:14
**knowing** [1] - 40:1
**knowledge** [3] - 28:20; 37:14; 50:6
**knows** [1] - 35:5
**Krear** [1] - 30:21

## L

**last** [8] - 4:12, 15, 18; 5:9, 11; 34:4; 42:14; 43:6
**LAURO** [48] - 2:1, 4; 3:8, 14; 10:6; 16:14, 16; 18:8; 19:20, 23; 20:9, 17, 21; 22:1; 23:6, 14, 17; 24:25; 25:3, 9; 26:1, 11, 16; 27:3, 23; 28:4, 15, 19; 29:7; 30:25; 31:14, 19; 32:1, 25; 33:4; 36:2; 41:18, 24; 42:1, 7, 13, 19; 43:20; 46:22; 56:1, 10, 20; 57:12

**Lauro** [26] - 3:14;          13:9, 17; 15:12; 17:24; 19:7; 20:20; 22:13, 18; 24:4, 22; 34:8; 36:6, 12, 19; 37:13, 24; 39:20; 41:17, 19; 43:19; 45:22; 54:14, 25; 57:1
**Lauro's** [5] - 15:5; 21:19; 33:24; 38:13; 45:10
**Law** [3] - 34:2; 35:3; 42:24
**LAW** [1] - 2:1
**law** [11] - 7:4, 11; 9:11; 31:5; 34:8; 35:9; 37:11, 18; 38:7; 39:15
**lawyer** [5] - 29:15; 30:5; 31:8; 49:20
**lawyers** [31] - 19:25; 25:16, 19; 26:4; 27:6, 10, 17, 19; 28:2; 28:1, 8; 29:4, 8, 14, 17-18, 24; 30:6, 8, 12, 15, 17; 31:1, 10; 32:11; 33:6; 36:22; 39:1; 40:16
**lawyers'** [1] - 30:24
**layers** [1] - 31:10
**leader** [1] - 19:4
**leadership** [1] - 19:10
**leads** [2] - 17:1; 18:10
**learns** [1] - 50:10
**least** [4] - 29:16; 30:12; 32:13; 53:16
**leaving** [1] - 5:25
**led** [3] - 16:5; 18:13; 50:1
**legal** [1] - 48:8
**lesser** [1] - 53:3
**letter** [33] - 6:5; 8:13; 9:2; 12:15; 13:5; 15:19; 16:6; 17:20, 25; 20:21; 21:9, 19; 22:15; 24:9; 26:22; 28:14; 31:12, 16, 20; 32:21; 37:9; 40:24; 41:12; 43:24; 52:5; 54:4, 22; 56:18; 57:6
**letters** [3] - 15:23; 20:12; 54:19
**level** [3] - 49:8; 55:2, 15
**liability** [1] - 52:5
**lied** [1] - 21:22
**light** [2] - 11:19; 52:12
**line** [10] - 7:12; 22:20; 23:20; 33:17; 35:2, 10-11; 37:21
**listed** [2] - 12:8; 52:8
**listen** [1] - 14:2
**local** [1] - 53:4
**location** [1] - 35:14
**logical** [1] - 32:19
**look** [9] - 27:4; 29:7; 41:13; 44:16; 45:21; 46:14, 16; 47:11; 51:14
**looked** [3] - 5:2; 31:16; 50:9
**looking** [4] - 25:18; 27:10; 34:14; 49:24
**loss** [4] - 34:25; 35:1; 40:13; 45:6
**lost** [3] - 11:22; 12:13

## M

**mail** [1] - 2:17
**mails** [2] - 45:24
**mandatory** [1] - 8:18
**Mandatory** [3] - 6:6; 9:3; 53:21
**manipulation** [6] - 17:14; 18:21; 20:25; 56:12, 17
**manner** [1] - 52:23
**March** [1] - 12:20

**Martinez** [1] - 16:23
**Martino** [30] - 2:8; 3:2, 10, 16; 10:3, 11, 23; 12:6, 22, 24; 39:3; 44:6, 15, 18, 25; 45:13; 46:5; 49:3, 22, 25; 50:5, 15, 18, 23, 25; 51:12, 15; 52:14, 18, 23
**MARTINO** [1] - 1:16
**Martino's** [2] - 19:10; 47:15
**material** [1] - 4:23
**math** [5] - 12:15; 13:2; 39:13; 43:3, 8
**mathematical** [1] - 14:9
**matter** [6] - 11:4; 24:10, 18; 30:16; 40:14; 57:18
**matters** [4] - 21:5, 18; 29:4; 51:22
**MAXON** [2] - 8:8, 12
**Maxon** [2] - 2:12; 3:13
**McMAHON** [1] - 2:5
**McMahon's** [1] - 11:11
**mean** [12] - 5:17; 16:2; 25:2, 24; 38:1, 25; 47:3; 48:2; 49:7, 20; 50:3; 51:2
**means** [4] - 20:6; 21:7; 41:1
**Media** [1] - 2:9
**meet** [1] - 26:5
**meeting** [2] - 28:10; 36:21
**Metropolitan** [2] - 48:16; 49:16
**mid** [1] - 29:19
**mid-July** [1] - 29:19
**middle** [1] - 4:2
**might** [2] - 11:6; 43:1
**mind** [1] - 14:20
**minor** [10] - 11:4, 14; 13:1, 17; 38:17; 39:7; 41:8, 14, 20
**minute** [1] - 18:1
**misapprehends** [1] - 56:11
**miss** [1] - 57:3
**missed** [1] - 43:25
**misspoken** [1] - 11:6
**mistake** [4] - 41:10, 14; 44:7
**mistaken** [1] - 38:22
**Monday** [7] - 5:7, 13, 16; 53:14, 17; 54:4; 57:6
**money** [4] - 26:3; 42:3, 16
**morning** [9] - 3:6-8, 25; 5:4; 13:16; 22:20; 35:6, 8
**most** [3] - 16:20; 28:5; 39:14
**motion** [1] - 24:19
**move** [1] - 23:5
**MR** [129] - 3:7, 12, 14, 21; 6:9, 15, 24; 7:2, 11, 21; 8:6, 8, 12, 23; 9:9; 10:6; 11:4, 13; 12:1, 16, 18; 13:6, 15; 14:17, 19, 25; 15:2, 4; 16:14, 16; 18:8; 19:20, 23; 20:9, 17, 21; 21:14, 17; 22:1, 12; 23:6, 14, 17, 24-25; 25:3, 9; 26:1, 11, 16; 27:3, 23; 28:4, 15, 19; 29:7; 30:25; 31:14, 19; 32:1, 25; 33:4; 34:2, 6, 9, 12; 40:6, 19, 23; 41:3, 6, 16, 18, 24; 42:1, 7, 13, 19-20, 23; 43:10, 14, 20; 45:3, 6; 46:22; 48:7, 25; 49:4; 51:7, 10, 18, 21; 53:14; 54:13, 18, 21, 24; 55:6, 9, 12, 14, 20; 56:1, 10, 20, 22, 25; 57:9, 11
**Mr. McMahon** [31] - 3:4, 17-18, 20, 24;

4:2, 9, 14, 19; 5:1, 14, 17, 23, 25; 7:25;
8:10; 9:1, 5, 13, 19, 22; 11:8; 13:8, 11;
14:1, 3, 8, 12, 14, 16
   **MS** [17] - 3:16; 43:23; 44:2, 19, 21, 24;
45:2, 5, 7; 46:23; 47:5; 49:9; 50:10;
51:4; 52:3; 53:5, 9
   **multiple** [20] - 25:19; 27:6, 9, 17, 19;
29:4, 14, 17, 24; 30:2, 6, 8; 31:7; 36:15;
39:21; 45:24; 49:5; 53:18
   **murder** [4] - 4:20; 5:1, 18; 38:3
   **must** [1] - 46:5
   **MVRA** [2] - 6:9; 7:15

## N

   **names** [1] - 8:7
   **narrowly** [2] - 7:3, 24
   **National** [2] - 2:11; 3:21
   **nature** [3] - 16:21; 22:5; 28:16
   **NBA** [38] - 4:13; 9:24; 11:24; 12:1;
13:13, 20; 17:14; 21:5; 24:23, 25;
25:10, 12, 25; 26:2; 27:13; 28:10; 29:1,
20; 30:19; 33:9, 15-16; 35:4; 37:24;
38:20; 39:1; 40:11, 16, 24; 42:16;
44:11; 45:15; 46:3, 10; 47:21; 51:23
   **NBA's** [2] - 9:15; 49:21
   **necessary** [2] - 27:15; 30:16
   **need** [12] - 3:24; 11:2; 12:15; 13:4;
18:6; 19:17; 21:6; 35:15; 38:25; 41:20,
22
   **needs** [2] - 22:10; 32:9
   **nefarious** [1] - 38:5
   **never** [3] - 20:13; 21:21; 32:3
   **NEW** [1] - 1:1
   **new** [1] - 39:5
   **New** [5] - 1:5, 13, 22-23; 42:24
   **news** [1] - 14:15
   **night** [3] - 5:8
   **nine** [1] - 28:9
   **None** [1] - 30:1
   **nonetheless** [1] - 22:16
   **note** [1] - 55:4
   **notebook** [1] - 33:5
   **nothing** [5] - 24:16; 27:12; 37:21; 41:6;
50:19
   **notion** [1] - 22:25
   **Number** [1] - 11:16
   **number** [6] - 8:19; 21:24; 52:22; 53:2

## O

   **o'clock** [1] - 5:5
   **objection** [2] - 8:11
   **objectively** [1] - 46:7
   **obviously** [3] - 36:2; 37:17; 56:7
   **occurred** [1] - 50:18
   **October** [4] - 11:17, 23; 30:9; 50:15
   **OF** [5] - 1:1, 3, 11, 18; 57:17
   **Offense** [1] - 8:8
   **offense** [12] - 6:16, 23; 7:14, 19-20,
22, 24; 9:11; 19:10; 52:7, 10, 20

   **offenses** [1] - 17
   **Office** [2] - 16:8; 23:22
   **Office's** [2] - 16:11; 23:23
   **officer** [2] - 8:4, 6
   **Official** [2] - 2:16; 57:22
   **official** [1] - 25:12
   **officials** [1] - 29:20
   **offset** [3] - 42:6; 43:9
   **offsetting** [1] - 42:1
   **once** [2] - 51:12; 54:1
   **one** [34] - 5:22; 6:3; 7:15; 9:12; 11:4,
16; 13:17; 20:7; 21:8, 14; 29:16; 31:8;
37:5; 38:17; 40:7, 13, 23-24; 41:19, 24;
44:2; 46:9, 19; 48:5; 49:14; 53:12; 54:7,
19; 55:7, 16, 24; 56:10
   **One** [2] - 16:20; 45:9
   **one-sentence** [1] - 40:24
   **ones** [2] - 44:12; 46:15
   **open** [2] - 3:1
   **operated** [2] - 24:1
   **operating** [1] - 24:17
   **opportunity** [2] - 4:17; 19:24
   **opposed** [2] - 24:5; 26:7
   **ORAL** [1] - 1:18
   **Orange** [1] - 2:9
   **order** [3] - 6:4, 25; 31:2
   **originally** [1] - 32:23
   **Originally** [1] - 34:15
   **otherwise** [3] - 10:13; 16:10; 32:4
   **outlined** [1] - 57:7
   **outstanding** [1] - 4:11
   **overkill** [1] - 25:23; 37:15
   **overstated** [1] - 20:23
   **overt** [1] - 6:20
   **owes** [1] - 46:5
   **own** [1] - 40:3

## P

   **package** [2] - 4:14, 16
   **Page** [1] - 41:20
   **paid** [4] - 25:25; 26:2; 42:4
   **paper** [1] - 10:9
   **papers** [5] - 4:12; 7:7, 17, 23; 15:13
   **paragraph** [1] - 32:22
   **Paragraph** [1] - 26:22
   **paragraphs** [1] - 6:20
   **paralegals** [3] - 29:25; 31:9; 33:7
   **parcel** [1] - 7:21
   **Pardon** [1] - 5:14
   **parse** [6] - 48:10, 16, 20-21, 24
   **parsed** [1] - 44:5
   **part** [6] - 7:21; 28:5; 35:13; 52:13, 15,
19
   **participated** [1] - 56:13
   **participating** [2] - 27:7; 51:23
   **participation** [2] - 40:4; 45:7; 52:16
   **particular** [6] - 15:22; 29:9; 30:1; 32:5;
49:18
   **particularly** [2] - 16:24; 40:11
   **parties** [1] - 46:10

   **partly** [1] - 40:12
   **party** [1] - 35:19
   **Paul** [2] - 2:10; 3:21
   **Pause** [2] - 11:7; 54:6
   **pay** [3] - 8:20; 26:5; 33:17
   **payments** [1] - 42:12
   **payroll** [1] - 35:5
   **pays** [1] - 35:5
   **pecuniary** [1] - 6:11
   **Pennsylvania** [2] - 2:7, 9
   **people** [4] - 20:13; 31:12; 39:14; 49:19
   **percentage** [1] - 34:16
   **performed** [2] - 31:7; 32:6
   **performing** [1] - 29:15
   **period** [6] - 12:21; 44:3; 45:23; 46:25;
47:2, 16
   **periods** [2] - 49:5, 7
   **Permissive** [2] - 9:4, 8
   **permit** [1] - 10:20
   **permitted** [1] - 52:5
   **persuaded** [1] - 38:13
   **pertain** [1] - 49:2
   **pertains** [1] - 4:10
   **pertinently** [1] - 16:10
   **Philadelphia** [1] - 2:7
   **phone** [3] - 3:17, 25; 14:2
   **pick** [1] - 35:24
   **picks** [1] - 50:21
   **piece** [1] - 17:7
   **played** [1] - 52:7
   **Plaza** [1] - 1:23
   **plea** [2] - 23:21; 39:2
   **plead** [1] - 12:24
   **pled** [3] - 25:5; 30:11; 47:2
   **point** [21] - 13:7; 18:18; 20:8; 21:15;
22:1, 8; 24:7; 33:3; 39:16; 40:21; 41:8,
14, 20; 42:19; 45:16; 48:8; 50:17, 21;
51:17; 57:3
   **points** [2] - 49:9; 53:24
   **portion** [4] - 42:15; 43:4; 46:21; 53:3
   **position** [35] - 6:5, 22; 8:1, 15, 22;
13:22; 17:10; 18:3; 21:3, 21; 24:12,
22-23, 25; 31:22; 33:22, 24; 34:19;
35:7, 16, 18; 37:3, 5, 11; 38:7; 40:15;
42:18; 43:12; 44:21, 24; 49:10, 22;
53:11; 54:9; 56:19
   **possible** [2] - 14:20; 15:8
   **possibly** [1] - 47:12
   **pre** [4] - 19:11, 15; 34:15
   **pre-sentence** [4] - 19:11, 15; 34:15
   **preceded** [4] - 49:14; 50:12, 25; 51:8
   **precedent** [2] - 16:3; 22:24
   **preceding** [1] - 50:19
   **precisely** [2] - 36:16; 38:8
   **predated** [1] - 51:16
   **preferable** [1] - 10:16
   **preparation** [1] - 45:19
   **prepare** [1] - 30:6
   **prepared** [2] - 8:8; 13:13; 36:24
   **preparing** [2] - 8:13; 29:17
   **prepped** [1] - 32:17
   **prepping** [3] - 25:17; 27:18; 46:12

8

present [10] - 3:2; 26:22; 27:19, 22; 28:2, 8; 30:8; 39:1
press [1] - 39:16
pressure [1] - 53:6
presumably [1] - 39:7
presumes [1] - 38:24
pretty [1] - 20:15
previous [1] - 46:19
principal [2] - 4:10; 24:10
privy [2] - 37:17; 38:16
probation [1] - 8:4
Probation [3] - 2:12; 3:13; 8:14
problem [4] - 17:1; 26:3; 27:3; 47:17
proceed [1] - 24:15
proceeding [4] - 17:9; 20:15; 34:4; 39:7
proceedings [11] - 10:19; 20:11; 38:20, 23; 39:2; 40:4, 9-10, 21; 57:13, 18
Proceedings [1] - 2:18
process [1] - 8:13
procuring [1] - 46:11
produce [1] - 26:5
produced [12] - 2:19; 28:21; 29:14, 16, 23; 30:3, 12, 19; 33:5; 49:1
producing [1] - 37:15
production [10] - 27:9; 29:13, 21; 30:10, 13-14; 32:11; 45:20; 46:18; 48:24
productions [2] - 28:20; 32:18
proffer [2] - 56:2, 6
progeny [1] - 7:12
promise [1] - 17:3
properly [1] - 48:20
proposal [1] - 30:21
propose [1] - 10:22
proposing [1] - 36:12
proposition [2] - 7:5; 9:11
prosecutable [2] - 17:1; 18:13
prosecuted [1] - 17:21
prosecution [3] - 18:2, 10; 51:24
prosecutions [1] - 16:5
prove [2] - 6:25; 7:1
provide [8] - 17:3; 18:11, 16; 19:1, 5; 33:12; 57:6
provided [20] - 15:6, 24; 16:9; 17:7, 13, 22; 18:1, 20; 20:5, 24; 24:14; 27:13; 33:9; 35:12, 15; 36:23; 37:23; 48:4; 56:16
provides [3] - 23:7, 9; 38:22
Provision [3] - 9:3, 8
Provisions [1] - 6:7
proximate [1] - 25:4
purpose [5] - 16:1; 19:20, 23; 40:17, 19
purposes [4] - 15:15; 26:8; 34:23; 35:3
put [8] - 7:22; 11:5; 12:15; 13:4, 25; 17:10; 21:9; 32:11
puts [1] - 18:16

quash [1] - 15:5
questioned [1] - 37:24
questioning [1] - 34:4
questions [1] - 40:16
quite [1] - 47:24
Quite [1] - 24:4
quoted [1] - 53:20

R

raise [1] - 41:9
raised [1] - 13:9
raises [2] - 13:16, 18
range [1] - 16:24
Rather [1] - 33:14
rather [1] - 17:9
RDR [2] - 2:15; 57:22
read [4] - 7:6; 13:15; 49:11
realized [1] - 44:10
really [9] - 13:22; 41:4; 42:15; 44:10, 14; 46:10; 47:19; 48:2; 53:6
reason [3] - 37:1; 45:8; 50:17
reasonable [15] - 26:11, 15; 27:14; 31:1, 3-4, 6; 32:8, 15, 19; 33:7, 18; 36:18; 40:3
reasoning [1] - 22:21
receive [1] - 5:3
received [8] - 4:14; 5:4, 9; 46:24; 47:3, 6; 52:13
recitation [1] - 19:13
recognized [1] - 17:10
reconciled [1] - 53:24
record [6] - 3:11; 11:5; 24:16; 36:20; 55:4; 57:18
recorded [1] - 2:18
records [11] - 26:17; 28:1; 31:16; 32:2, 4; 35:5; 45:16; 46:8; 47:5, 7
recoverable [4] - 25:21; 37:10; 48:18, 22
recovering [1] - 38:9
refer [1] - 28:13
referees [3] - 17:14; 18:21; 56:12
referenced [1] - 20:13
reflected [1] - 11:19
regarding [8] - 10:11; 13:9; 17:4, 25; 18:20; 20:4; 24:21; 38:7
relate [3] - 47:2, 9, 19
related [2] - 11:18; 25:13
relates [1] - 45:25
relating [1] - 25:11
relationship [1] - 50:8
relative [1] - 54:2
relevant [2] - 16:19; 54:12
relied [3] - 7:12, 18; 41:11
rely [1] - 46:2
relying [2] - 7:8, 10
remaining [1] - 15:9
remarks [1] - 41:23
repeat [1] - 19:17

repetition [1] - 10:8
reply [1] - 5:3
report [4] - 8:7; 19:11; 41:21
Reporter [2] - 2:15; 57:22
REPORTER [1] - 57:17
reports [2] - 19:16; 34:16
Reports [1] - 8:9
representations [1] - 46:2
represented [1] - 11:16
reputational [1] - 40:12
request [5] - 15:5; 24:21; 38:19, 21; 39:25
requests [2] - 45:18, 25
require [2] - 30:20; 31:1
required [3] - 26:4; 32:9; 39:6
requirement [1] - 6:12
requirements [1] - 36:13
requires [2] - 31:4; 33:15
requisite [2] - 12:15; 33:11
researched [1] - 49:2
resolve [1] - 14:21
resolved [1] - 10:17
respect [15] - 8:14; 9:15, 25; 11:2, 11; 17:14; 21:5; 22:17; 29:9; 33:22; 34:10, 20; 53:12; 54:10
respects [1] - 21:5
respond [7] - 4:22; 5:12, 15; 12:2; 25:11; 40:15
responding [2] - 45:18, 25
response [5] - 8:11, 13; 13:13; 20:22; 41:23
responses [1] - 9:23
responsibility [4] - 17:3; 20:2; 28:23; 33:12
responsible [8] - 9:16; 26:9; 33:25; 35:20; 52:18; 53:2
responsive [1] - 26:12
restitution [29] - 4:12; 5:3; 7:3; 8:14, 17-19; 9:16; 10:1, 9, 16; 13:9; 15:9; 24:21; 30:23; 31:4; 32:3; 36:14; 38:8; 42:5; 44:5; 47:18; 49:24; 52:9, 13, 15; 53:1, 25; 57:8
Restitution [6] - 6:7; 34:2; 35:3; 53:21
result [6] - 17:8, 22; 18:2; 21:1; 25:4; 50:5
resume [1] - 6:4
retained [1] - 42:16
retired [1] - 14:23
retrospect [1] - 46:4
revealed [2] - 55:1; 56:4
revealing [1] - 55:3
review [5] - 47:24; 48:5
reviewed [6] - 4:19; 26:17; 27:5; 37:20
reviewing [5] - 29:25; 33:6; 46:12
role [5] - 19:10; 52:7, 10, 20
roles [2] - 19:15; 49:19
roughly [1] - 13:20
routine [1] - 38:1
rush [1] - 43:24
rushed [1] - 47:24

## S

**salary** [5] - 33:23; 34:17; 35:12; 43:11; 52:13
**Saturday** [1] - 6:1
**saw** [2] - 5:10; 48:3
**Scala** [11] - 14:21, 24; 15:14, 16; 18:10; 19:1; 20:3; 22:2; 23:2; 24:19
**Scala's** [2] - 16:2; 18:7
**schedule** [1] - 10:20
**scheme** [1] - 51:16
**season** [11] - 46:13, 20; 47:13, 25; 48:6; 49:3; 50:13, 20
**seasons** [3] - 34:1; 46:19; 50:18
**second** [1] - 12:18
**Second Circuit** [1] - 30:22
**section** [1] - 8:22
**Section** [1] - 53:18
**see** [6] - 5:5; 8:11; 18:5; 31:16; 45:23
**seeing** [1] - 38:13
**seeking** [4] - 5:20; 9:17; 41:10
**seem** [1] - 47:16
**send** [1] - 40:24
**sense** [3] - 26:23; 40:3
**sent** [1] - 41:21
**sentence** [5] - 19:11, 15; 34:15; 40:24
**sentencing** [4] - 10:24; 14:11; 16:19; 40:8
**sentencings** [2] - 10:18, 22
**separate** [1] - 49:14
**servant** [1] - 42:25
**serve** [1] - 13:5
**served** [2] - 4:13; 16:2
**services** [6] - 13:19; 35:10, 12, 15; 45:6
**sessions** [1] - 45:19
**set** [8] - 17:20; 19:11, 15; 21:18; 22:20; 36:13; 37:12
**settled** [1] - 39:16
**severance** [4] - 42:7, 12, 21
**shall** [1] - 23:24
**Shechtman** [11] - 2:10; 3:21, 23; 12:11; 13:13; 36:7; 37:7; 39:10; 41:12, 23
**SHECHTMAN** [11] - 3:21; 39:12; 40:6, 19, 23; 41:3, 6, 16; 42:20, 23; 43:10
**Shin** [1] - 29:25
**short** [3] - 5:21, 23; 51:10
**shortens** [1] - 12:21
**show** [1] - 30:5
**showed** [1] - 40:8
**showing** [2] - 23:25; 29:18
**side** [1] - 39:16
**significance** [4] - 16:21; 18:12, 24; 22:4
**significant** [1] - 17:7
**similar** [1] - 45:10
**simply** [3] - 7:8; 37:2; 40:9
**situation** [2] - 20:11; 31:6
**situations** [1] - 22:18
**small** [2] - 45:23; 47:17

**solely** [1] - 10:5
**Solely** [1] - 44:20
**Solomon** [1] - 3:12
**SOLOMON** [1] - 1:24
**somewhat** [1] - 26:20
**somewhere** [1] - 5:8
**sorry** [4] - 3:23; 11:8, 10; 44:4
**sort** [3] - 24:2; 32:6; 35:9
**sought** [2] - 32:3; 41:9
**speaking** [2] - 30:15; 45:3
**speaks** [1] - 53:18
**specific** [10] - 6:15; 7:13; 26:24; 27:4, 12; 30:20; 39:25; 45:10, 21; 47:13
**specifically** [9] - 8:1; 31:2, 14, 23; 33:3; 38:22; 44:12; 45:16; 47:14
**specificity** [1] - 32:14
**specified** [3] - 6:19; 7:22; 54:19
**speculate** [1] - 50:24
**spend** [2] - 25:16; 26:3
**spending** [2] - 27:18; 29:19
**spent** [6] - 28:8; 30:14, 17; 45:18; 46:11; 48:4
**spiking** [1] - 28:11
**spoken** [1] - 56:22
**stand** [1] - 23:4
**standard** [2] - 38:12; 52:1
**start** [2] - 14:4; 34:21
**State** [1] - 42:24
**state** [1] - 3:11
**statement** [2] - 23:13, 16
**statements** [1] - 57:7
**status** [1] - 12:19
**statute** [9] - 7:3; 25:1, 15; 28:12; 33:12, 18; 38:22; 39:9; 53:16
**statutes** [2] - 36:14; 39:5
**stay** [1] - 14:2
**stenography** [1] - 2:18
**Steven** [1] - 41:20
**still** [1] - 48:18
**Street** [2] - 2:6, 9
**subject** [5] - 30:7, 16; 42:11, 22
**submission** [16] - 9:13, 15, 20, 23; 11:14; 12:7; 13:14, 25; 14:4; 28:22; 30:21; 33:1; 43:18; 53:14; 57:2
**submissions** [9] - 5:13, 15; 10:13; 20:12; 24:8; 37:21; 38:16; 41:2, 5
**submit** [3] - 14:4; 33:8; 43:24
**submitted** [9] - 4:18, 24; 20:21; 26:18; 32:16; 33:15; 44:11; 45:15; 46:8
**subpoena** [7] - 11:18, 24; 12:2, 4; 15:5, 7; 25:11
**substantial** [1] - 16:9
**substantiate** [2] - 23:8; 36:16
**substantiated** [2] - 23:10, 12
**subtracted** [1] - 43:11
**suffered** [1] - 6:11
**sufficient** [3] - 15:6; 32:12; 36:23
**suggest** [3] - 24:17; 28:1; 48:1
**suggested** [4] - 17:22; 45:12; 52:9; 56:16
**suggesting** [2] - 40:20; 52:25
**suggestion** [2] - 56:12, 15

**suggests** [4] - 44:5; 45:17; 50:22; 54:14
**Suite** [2] - 2:3, 6
**Sunday** [1] - 6:1
**superficial** [1] - 56:2
**supervised** [1] - 45:20
**supervisory** [1] - 23:3
**supplied** [1] - 47:20
**support** [4] - 7:4; 9:11; 15:6; 22:24
**supported** [1] - 10:12
**supports** [2] - 40:3; 44:11
**supposed** [2] - 5:11; 19:18
**suspect** [2] - 54:3, 25

## T

**talks** [2] - 7:13; 38:9
**Tampa** [1] - 2:3
**target** [1] - 30:7
**tasks** [5] - 29:15; 30:1; 31:7; 32:5, 7
**TCs** [1] - 45:24
**teleconference** [1] - 11:17
**telephone** [1] - 3:4
**Telephone** [1] - 2:16
**terms** [7] - 7:19; 8:25; 23:20; 27:12; 30:20; 32:5; 38:25
**testify** [1] - 40:9
**testimony** [3] - 16:2; 18:7; 23:18
**THE** [152] - 1:19; 3:6, 17, 19, 23; 4:6, 10, 17, 22; 5:12, 15, 20, 24; 6:3, 12, 22, 25; 7:4, 17; 8:4, 7, 10, 16, 24; 9:6, 10, 20, 23; 10:7; 11:6, 8, 10, 25; 12:14, 17; 13:4, 7, 12; 14:1, 6, 11, 13, 15, 18, 24; 15:1, 3, 12; 16:15; 17:19; 19:5, 22; 20:6, 10, 19; 21:7, 16; 23:11, 15, 19; 25:2, 8, 22; 26:4, 14, 17; 27:21, 25; 28:13, 18; 29:5; 30:23; 31:11, 15, 22; 32:24; 33:1, 20; 34:3, 7, 10, 13, 19, 25; 35:6, 19, 24; 36:1, 3, 6, 10; 37:1, 7, 13, 19; 38:6, 17, 23; 39:10; 40:5, 18, 20; 41:1, 4, 7, 17, 19, 25; 42:3, 10, 17, 21; 43:9, 12, 15, 21; 44:1, 17, 20, 23; 45:1; 46:17; 47:3; 48:5, 23; 49:1; 50:3; 51:2, 5, 9, 17, 19; 52:2, 25; 53:8, 11; 54:5, 7, 14, 20, 23; 55:5, 7, 10, 13, 16; 56:8, 18, 21, 23; 57:1, 10
**themselves** [2] - 26:20; 41:13
**therein** [1] - 6:20
**they've** [4] - 32:16; 44:7; 46:13
**thin** [1] - 27:11
**thinks** [1] - 9:7
**THOMAS** [1] - 1:16
**thousand** [2] - 12:23; 42:4
**thousands** [2] - 27:8
**three** [10] - 8:9; 11:14, 21; 12:10; 25:16; 32:11; 33:7; 39:14; 57:2
**Thursday** [1] - 4:15
**timeframe** [1] - 49:18
**timing** [2] - 54:23; 56:8
**TIMOTHY** [1] - 1:7
**today** [5] - 3:24; 4:8, 22; 13:5; 44:24
**token** [1] - 12:24

9

**took** [2] - 25:12; 32:25
**top** [3] - 40:14; 43:3, 7
**totally** [1] - 41:14
**touched** [1] - 44:2
**transactions** [1] - 50:6
**TRANSCRIPT** [1] - 1:18
**Transcript** [1] - 2:18
**transcript** [1] - 57:18
**Transcription** [1] - 2:19
**tremendous** [1] - 22:21
**trial** [7] - 4:1, 3, 20, 25; 5:2; 6:4; 20:14
**tried** [2] - 37:12; 39:19
**true** [5] - 7:2; 18:23; 21:10; 48:21; 55:1
**Trustees** [1] - 30:21
**truth** [1] - 21:23
**truthful** [2] - 15:21; 24:10
**truthfulness** [2] - 16:12; 23:24
**trying** [1] - 48:9
**Tuesday** [1] - 5:9
**turn** [2] - 20:10; 24:20
**turns** [1] - 39:21
**Two** [1] - 11:14
**two** [10] - 27:21; 28:5; 29:18; 30:12; 32:22; 36:22; 39:22; 49:12; 53:24
**two-paragraph** [1] - 32:22

**U**

**U.S** [3] - 2:12; 16:23
**ultimately** [2] - 18:2; 24:5
**under** [22] - 6:23; 8:18, 22; 9:3, 8; 10:15; 12:21; 16:23; 18:8; 22:6; 23:20; 25:15; 28:12; 33:12, 18; 36:13; 37:10; 39:5; 53:6
**Under** [1] - 34:2
**underlying** [1] - 6:16
**understandably** [1] - 48:10
**understood** [5] - 16:7; 35:6; 50:8, 12; 57:4
**undertaken** [1] - 27:2
**underway** [2] - 50:14, 20
**unfair** [1] - 52:14
**unfaithful** [1] - 42:24
**United States** [10] - 1:1, 3, 5, 11, 13, 19, 22, 25; 3:9; 53:9
**unlike** [1] - 22:18
**unquestionably** [1] - 51:11
**unreasonable** [1] - 39:23
**unsubstantiated** [1] - 21:20
**up** [12] - 11:22; 13:8; 20:14; 24:5; 29:18; 30:5; 40:8, 10; 41:2; 42:9; 43:4; 48:1
**urge** [1] - 15:4
**uses** [1] - 9:12

**V**

**vacation** [1] - 5:25
**vague** [1] - 26:20
**value** [2] - 16:11; 23:23
**variance** [1] - 19:3

**various** [1] - 26:25
**versus** [5] - 3:9; 34:11, 13; 35:13; 49:2
**vetted** [1] - 28:23
**via** [1] - 3:4
**VICKI** [1] - 2:8
**Vicki** [1] - 3:16
**Victim** [1] - 53:21
**victim** [13] - 6:10; 7:8; 36:15, 17, 23; 37:25; 38:2; 39:5; 40:7; 48:15
**view** [2] - 22:9; 48:19
**voluminous** [1] - 4:16
**voluntarily** [1] - 56:4
**voyeuristic** [2] - 40:17, 19

**W**

**wagering** [2] - 7:1, 20
**waives** [1] - 4:7
**Waldman** [1] - 29:25
**Walnut** [1] - 2:6
**wants** [3] - 7:25; 29:1; 41:3
**water** [1] - 21:25
**ways** [1] - 13:24
**Wednesday** [1] - 4:15
**week** [5] - 4:12, 15, 18; 5:11; 6:2
**week's** [1] - 5:25
**whatsoever** [1] - 23:5
**WHEREUPON** [1] - 57:13
**white** [1] - 38:4
**whole** [1] - 7:12
**wide** [1] - 16:24
**widow** [1] - 38:3
**wind** [1] - 51:13
**winds** [1] - 43:4
**wish** [2] - 6:2; 15:14
**witness** [15] - 15:14; 20:11; 27:16, 18; 29:16; 30:4, 6-7; 36:21; 38:24; 45:19; 49:6
**witnesses** [15] - 25:17; 27:5, 16; 29:10, 16; 30:3; 32:17; 39:24; 40:1; 46:1, 12; 47:20; 49:6
**word** [1] - 39:21
**words** [1] - 46:17

**Y**

**years** [2] - 47:10, 22
**yesterday** [4] - 5:4; 8:13; 11:15; 12:7
**YORK** [1] - 1:1
**York** [5] - 1:5, 13, 22-23; 42:24
**yourself** [1] - 15:23

**§**

**§1B** [2] - 54:18; 55:4
**§3663** [1] - 8:18
**§3664(e)** [1] - 33:13
**§C1(a)(2** [1] - 6:23