

**U.S. Department of Justice**

*United States Attorney*
*Eastern District of New York*

```
JDB:JAG/AAS
F.#2007R00092
F.#2008R00301
```

*271 Cadman Plaza East*
*Brooklyn, New York 11201*

July 14, 2008

<u>VIA ELECTRONIC FILING</u>

```
The Honorable Carol Bagley Amon
United States District Judge
United States Courthouse
225 Cadman Plaza East
Brooklyn, New York 11201
```

    Re: United States v. Timothy Donaghy
      Criminal Docket No. 07-587 (CBA)

      United States v. James Battista, et al.
      <u>Criminal Docket No. 08-086 (CBA)</u>

Dear Judge Amon:

    The government respectfully submits this letter to supplement its July 7, 2008 submission concerning restitution in both of the above-referenced cases.  Sentencing for the defendants James Battista and Thomas Martino is scheduled for July 24 at 9:30 a.m., and sentencing for the defendant Timothy Donaghy is scheduled for July 29 at 11:00 a.m.

    In our July 7 submission, we indicated that $233,317 of restitution claimed by the National Basketball Association ("NBA") should be apportioned in the following manner:

| | |
|---|---|
| Donaghy, Battista, and Martino | $209,267 |
| Battista and Martino | <u>24,050</u> |
| | <u>$233,317</u> |

In light of the adjustments set forth below, the government believes that following apportionment is appropriate:

| | |
|---|---|
| Donaghy, Battista, and Martino | $197,817 |
| Battista and Martino | 14,400 |
| Donaghy | 21,100 |
| | $233,317 |

## I.   Battista Should Be Included in Any Restitution Order

In our July 7 submission, we argued that Battista should be responsible for restitution in this case under the Mandatory Victims Restitution Act of 1996 ("MVRA"). We explained that as to Battista the NBA is "an identifiable victim [that] has suffered a . . . pecuniary loss." 18 U.S.C. § 3663A(c)(1)(B). During oral argument on July 9, the government also argued that Battista has been convicted of an offense "committed by fraud or deceit." Id. § 3663A(c)(1)(A)(ii). As set forth in the government's prior submission (see Govt.'s 7/7/08 Let. at 2-3, 15-17), the allegations to which Battista pled guilty (including the introductory paragraphs and the overt acts), coupled with his allocution (in which he plainly admitted to being part of the fraudulent gambling scheme in this case), reveal that his offense of conviction is one that was "committed by fraud or deceit."

In the alternative, the government submits that Battista should be responsible for restitution under the Victim and Witness Protection Act ("VWPA"). The VWPA does not require, as an element of the convicted offense, an element of fraud or deceit. Rather, under the VWPA, a court limits its analysis to the following factors in determining whether to impose restitution: (1) the amount of loss sustained by the victim; (2) "the financial resources of the defendant, the financial needs and earning ability of the defendant and the defendant's dependents, and such other factors the court deems appropriate"; and (3) a weighing of the "complication and prolongation" of the sentencing process against the need to provide restitution. 18 U.S.C. § 3663(a)(1)(B).

Here, the amount of the loss sustained by the NBA is significant and warrants restitution under the VWPA. In addition, the inclusion of Battista in any restitution order would not unduly delay the sentencing process.[1]

---

[1] Notably, the MVRA also includes a provision calling for the weighing of the burden of adjudicating the restitution issue against the necessity of compensating the victim for his loss,

Battista asserts that the NBA is not an appropriate "victim" for restitution because the NBA was not harmed by Battista's offense of conviction.  The text of the VWPA, however, counsels a broad view of "victims" for the purposes of restitution, and permits restitution to "any person directly harmed by the defendant's criminal conduct in the course of the scheme." 18 U.S.C. § 3663(a)(2) (defining "victim"); see also United States v. Rand, 403 F.3d 489, 494 (7th Cir. 2005) (observing that § 3663(a)(2) defines the victims of criminal conduct "broadly"); United States v. Jewett, 978 F.2d 248, 253 (6th Cir. 1992) (interpreting the amended § 3663(a)(2) as "adopting a broader definition of 'victim'").

Courts have interpreted the "harm" language of the VWPA (and the MVRA) expansively in identifying appropriate victims for restitution to include victims not referenced in the relevant charging language or victims of ostensibly victimless offenses. In United States v. Suarez, 253 F. Supp. 2d 662 (S.D.N.Y. 2003), for example, the court held that the employer of a defendant convicted of participating in a scheme to cash fraudulently obtained United States Treasury checks addressed to residents at a Bronx address, was a victim entitled to restitution, where the defendant had cashed the checks through the employer.  Citing the MVRA, the Suarez court held that, "[i]n the process of participating in the scheme, which was not authorized or condoned" by her employer, the defendant caused her employer to lose $75,908.58 — the amount of the cashed Treasury checks.  Id. at 663.  "This loss should be redressed by the same individuals who caused the loss to happen, which in this case directly implicates [the defendant]."  Id.

Similarly, in United States v. Brock-Davis, 504 F.3d 991 (9th Cir. 2007), the Ninth Circuit affirmed an order of restitution to cover testing and cleanup costs for a motel room the defendant occupied during the course of a conspiracy to manufacture methamphetamine, even though the motel was not a traditional "victim" of the defendant's drug business.  See id. at 998; see, e.g., United States v. Gamma Tech Indus., Inc., 265 F.3d 917, 926-27 (9th Cir. 2001) (holding that employer of defendant convicted of accepting kickbacks in return for accepting subcontractors' proposals for work could recover

---

see 18 U.S.C. 3663A(c)(3)(B), and neither Donaghy nor Martino — to whom the provisions of the MVRA apply — have ever suggested that litigation pertaining to restitution has overwhelmed the sentencing process.

through restitution lost profits caused by employer's overpayment
to such subcontractors); United States v. Koenig, 952 F.2d 267,
274-75 (9th Cir. 1991) (upholding, in case involving conspiracy
to produce and use counterfeit ATM cards, restitution for the
cost of reprogramming bank computers after defendants had stolen
ATM account information).

In this case, Battista's participation in the
conspiracy to which he pled guilty clearly harmed the NBA.  As
such, the NBA qualifies as a victim under the VWPA.

As to the remaining factor, "[t]he burden of
demonstrating the financial resources of the defendant and the
financial needs of the defendant, shall be on the defendant."
18 U.S.C. § 3664(e).  In this case, Battista simply asserts that
he is financially unable to make any restitution payments, given
the fact that he is currently unemployed and living with five
minor children.  (Battista's 7/11/08 Let. at 4).  As explained
below, such an assertion is insufficient under the VWPA.

"A defendant's limited financial resources at the time
restitution is imposed is not dispositive of whether restitution
is proper."  United States v. Ben Zvi, 242 F.3d 89, 100 (2d Cir.
2001); see United States v. Mortimer, 52 F.3d 429, 436 (2d Cir.
1995) ("Even an indigent defendant may be subject to the duty to
pay restitution when and if funds are eventually required.").  In
Ben Zvi, for example, a defendant who had staged a robbery of her
own jewelry store in order to obtain insurance proceeds appealed
the imposition of restitution under the VWPA of more than
$6 million, claiming limited financial resources.  See 242 F.3d
at 99.  The Second Circuit affirmed the restitution order, noting
that "in the absence of a defendant showing a restricted future
earnings potential by a preponderance of the evidence, it is
entirely reasonable for a judge to presume future earnings in
ordering restitution."  Id. at 100.  Here, as in Ben Zvi, the
"record reveals no indication that [Battista] introduced any
evidence of a restricted earnings potential."  Id.

4

II.  <u>Expenses Incurred Participating in the Investigation or Prosecution</u>

    A.  <u>Modifications Previously Identified by the Government</u>

        As reported to the Court on July 9, the government seeks to modify its July 7 submission in the following three respects:

        First, because the the document subpoena issued to the NBA in October 2007 pertained only to Donaghy, costs incurred by the NBA responding to the subpoena should not be chargeable to Battista or Martino.  Based on the NBA's submissions, those costs amount to approximately $13,500.[2]

        Second, the government mistakenly identified the date of the <u>Battista</u> status confernece as March 10 instead of April 10.  Therefore, the costs incurred by the NBA from March 10 to April 10 should be borne not just by Battista and Martino, but by Donaghy as well.  Based on the NBA's submissions, those costs amount to approximately $9,650.

        Third, because Martino pled guilty before Battista, any trial preparation costs incurred after Martino's plea should be chargeable only to Battista.  Based on the NBA's submissions, however, no such costs were incurred.

    B.  <u>Issues Recently Raised by Martino</u>

        On July 11, Martino sought leave to file an additional restitution memorandum (which was submitted to the Court at the same time).  The government addresses below the issues raised by Martino, in the event the Court considers Martino's submission.

        First, Martino argues that he should not be responsible for costs incurred by the NBA responding to certain allegations contained within Donaghy's May 19 letter.  (Martino's 7/11/08 Let. at 3).  As the Court will recall, Donaghy's May 19 letter alleged, among other things, that (1) the NBA "pressured" the government to "shut[] down" its prosecution and (2) the NBA

---

    [2] In Martino's July 11 submission, he suggests that the legal fees incurred by the NBA in responding to the October 2007 subpoena total $22,800.  (<u>See</u> Martino's 7/11/08 Let. at 2).  Martino's figure, however, does not appear to be substantiated by the time sheets and accompanying affidavits contained within the NBA's July 1 submission.

rejected Donaghy's request to provide assistance to the NBA. The government agrees with Martino's contention that he should not be responsible (nor should Battista) for these costs, which resulted only from actions by Donaghy. Accordingly, $7,600 should assessed to Donaghy alone.

Second, Martino asserts that he should not be responsible for costs associated with the NBA's attendance at Donaghy's plea hearing. (Martino's 7/11/08 Let. at 3). The government disagrees. The MVRA specifically contemplates restitution for "attendance at proceedings related to the offense." 18 U.S.C. § 3663A(b)(4). Donaghy was the first of the coconspirators to plead guilty, and Donaghy's plea proceeding related to the conspiracy in which Martino eventually pled guilty.

Third, Martino maintains that the NBA should not be permitted to recover costs incurred with determining the NBA's public response to Donaghy's guilty plea. (Martino's 7/11/08 Let. at 3). The government believes that it was a foreseeable consequence of the defendants' criminal conduct — which involved depriving a global sports and entertainment organization the honest services of one of its referees — that the NBA would incur costs formulating a legal response to the public disclosure of the criminal conspiracy. Therefore, all three defendants should share in the cost of legal fees associated with the NBA's public response.

Fourth, Martino asserts that the hourly rates of the NBA's outside counsel are excessive. As we indicated during the July 9 oral argument, the government defers to the Court on the issue of the reasonableness of the costs proposed by the NBA.[3]

---

[3] In Cheesecake Factory Assets Co. v. Philadelphia Cheese Steak Factory Inc., 2008 WL 2510601 (E.D.N.Y. June 20, 2008) (NGG) (RML), the district court found that the rates of $595 per hour for partners, $330 to $350 per hour for associates, and $165 to $185 per hour for staff were excessive. Although the plaintiffs, as the prevailing party seeking fees in that case, asserted that such rates were "prevailing rates for Manhattan law firms," the court's research "failed to yield a single case that has upheld a rate approaching $600 per hour for a partner . . . over $300 per hour for associates or $150 per hour for paralegals/clerks." Id. at *5.

III. <u>Consideration of the Defendants' Economic Circumstances</u>

          As noted by the government during the July 9 hearing,
there appears to be some statutory tension as to whether and when
a sentencing court may consider the financial condition of a
defendant.  (Restitution is mandatory under the MVRA,
irrespective of a defendant's financial condition.)  However,
§ 3664(f)(1)(A) provides that economic circumstances of
defendants are not to be considered in determining whether to
impose restitution in the first instance.  The same statute
provides that a court may consider economic status in
apportioning any restitution order.  18 U.S.C. § 3664(f)(3)(B).

          Recently, courts have resolved this tension in the
statutory language by adhering to the following rule.  Once a
court determines to award restitution under either the MVRA or
VWRA, the court must award the full amount of the victim's
losses.  In making the discretionary determination under the VWRA
- but not the MVRA - the court must consider economic
circumstances.  In setting the payment schedule (or apportioning
restitution) under § 3664, the court should take into account
financial condition of defendants.  <u>Ferrarini v. United States</u>,
Nos. 01-Civ 6612 (DLC), 97 CR 950, 2002 WL 1144377, at *6
(S.D.N.Y. May 30, 2002); <u>accord</u> <u>United States v. Day</u>, 418 F.3d
746, 753-57 (7th Cir. 2005).

          Accordingly, in this case, the Court should determine
the total restitution amount and make a full restitution award in
that amount against all three defendants.  Once the Court has
determined the value of the NBA's loss, it may apportion
restitution amounts between the defendants based on economic
circumstances.

IV.   <u>Conclusion</u>

     In conclusion, the Court should order restitution to all defendants, in the amounts set forth above.

     Respectfully submitted,

     BENTON J. CAMPBELL
     United States Attorney

By:   <u>/s/ Alexander A. Solomon</u>
     Jeffrey A. Goldberg
     Alexander A. Solomon
     Assistant U.S. Attorneys
     (718) 254-7579/6074

cc:  All Defense Counsel
     U.S. Probation Officer Brandon Maxon

8