**FLORIDA**
Bank of America Plaza
101 East Kennedy Blvd.
Suite 3100
Tampa, Florida 33602
P: 813.222.8990
F: 813.222.8991

**NEW YORK**
1540 Broadway
Suite 1604
New York, New York 10036
P: 646.746.8659
F: 212.938.0858

John F. Lauro, P.A.
WWW.LAUROLAWFIRM.COM

# LAURO LAW FIRM
FLORIDA · NEW YORK

**By Electronic Case Filing**

July 27, 2008

Honorable Carol Bagley Amon
United States District Court Judge
United States District Court –
    Eastern District of New York
225 Cadman Plaza East
Brooklyn, NY  11201

Re:     United States v. Timothy Donaghy
        Case No. 07-CR-587-01

Dear Judge Amon:

Attached please find the declaration of our expert, Stephen Block.  This declaration is being filed in further support of our motion for downward departure pursuant to U.S.S.G. § 5K2.13.

Respectfully,

*John F. Lauro*

John F. Lauro

JFL/gmc


Enclosures

cc:   AUSA Jeffrey A. Goldberg
      USPO Brandon T. Maxon

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

---------------------------------------------------------X
UNITED STATES OF AMERICA,                :
                                          :
            Plaintiff,                    :      Case No. 07-cr-581-01
                                          :
v.                                        :
                                          :
TIMOTHY DONAGHY,                          :
                                          :
            Defendant.                    :
---------------------------------------------------------X

## DECLARATION OF STEPHEN BLOCK

I, Stephen Block, pursuant to 28 U.S.C. § 1746, under penalty of perjury that the below is true and correct:

### A. Background

1. I am a gambling treatment counselor and have worked with compulsive gamblers for over 32 years. I received my bachelor's degree in sociology from Brooklyn College and am a New York Certified Gambling Treatment Counselor and Supervisor (NYCGTC, NYCGTS). A copy of my C.V. is attached as Exhibit A.

2. From 1995 to 2007, I worked at the Gamblers Treatment Center, an outpatient program administered by St. Vincent's Catholic Medical Center in New York City. There, I counseled problem and compulsive gamblers and their spouses, both

1

individually and in groups. Further, I provided educational seminars on gambling prevention to schools, professional organizations, and community groups.

3.     From October 2003 to the present, I have worked as a gambling treatment counselor for the SAFE Foundation, a privately-operated addiction treatment program in Brooklyn, New York. There, I continue to counsel compulsive gamblers and substance abusers, both individually and in groups, in a community-based outpatient treatment center.

4.     I was a founding member and past president of the New York Council on Problem Gambling, an organization dedicated to raising public awareness about problem gambling through the state. In November 2003, I served on a New York State Assembly Task Force on Mental Health, whose mission was to determine how government resources could be applied to serve all New Yorkers in need of mental health, substance abuse, and gambling treatment services.

5.     I was recognized by the Eastern District of New York as an expert on gambling disorders in *United States v. Liu*, 267 F. Supp. 2d 371 (E.D.N.Y. 2003).

B.   **Pathological Gambling**

6.     Pathological gambling addiction, also called compulsive gambling, is an impulse control disorder that has been recognized by the American Psychiatric Association since 1980. For pathological gamblers, the urge to bet is trigged by an irresistible craving and the accompanying preoccupations and compulsion are similar to those of other addictions, such as abuse of alcohol or drugs.

2

7. The ability of a pathological gambler to exert rational self-control over his or her actions is significantly impaired. Those individuals will frequently take certain actions or make decisions that non-impaired individuals would never make. Such steps often lead to self-destructive consequences for pathological gamblers and their families, including financial devastation and marital ruin.

C. **Evaluation of Mr. Donaghy**

8. On January 9, 2008, I evaluated Timothy Donaghy to determine whether he suffered from a compulsive gambling disorder. As part of my diagnosis, I reviewed the Information and the Pre-Sentence Investigation Reports filed in this case. Further, I reviewed Mr. Donaghy's medical records and the records of his gambling therapist, Janice Machler. I also applied the diagnostic criteria set forth in the Diagnostic and Statistical Manual of Mental Disorders, Fourth Edition ("DSM IV"), a copy of which is attached as Exhibit B, and the South Oaks Gambling Screen ("SOGS"). Both of those diagnostic criteria are frequently used by mental health professionals as tools to determine whether an individual suffers from a pathological gambling disorder.

9. I also interviewed Mr. Donaghy extensively regarding his history of gambling, including his betting on golf and card games, his sports betting, the 2003 – 2006 gambling activity with Jack Concannon, and his involvement with James Battista and Thomas Martino.

10. After considering all of the above sources of information, I concluded that Mr. Donaghy is a pathological gambler, as described in the DSM IV and SOGS tests. A copy of my report is attached to this affidavit as Exhibit C.

3

### D. Mr. Donaghy's Attempts To Stop Gambling And Concealment Of Gambling Activities

11. I understand that it has been alleged that Mr. Donaghy's concealment of his wrongful activities and his ability to stop gambling for brief periods of time somehow indicate that Mr. Donaghy is not a pathological gambler and could control his gambling behavior "at will." Nothing could be further from the truth. Indeed, those two traits help mental health professionals identify pathological gamblers. Mr. Donaghy's pathological gambling addiction prevented him exercising rational control over his wrongful behavior. In short, he could not stop himself from gambling.

12. It is axiomatic that pathological gamblers conceal the extent of their gambling from family, friends, and employers. This is because the primary motivation of a pathological gambler is to continue gambling. As with other addictions, the compulsive gambler rationalizes and justifies concealing their behavior so as to continue with the activity. Thus, what might appear to be the conscious and deliberate act of hiding improper conduct is actually a pattern of compelled behavior that manifests itself in order to maintain the addiction. Thus, like the gambling itself, concealment of gambling activities is compulsive and beyond the gambler's ability to control. Such is the case with Mr. Donaghy, who concealed his gambling behavior from friends and family for many years in order to continue with the activity.

13. Further, pathological gamblers are also defined by their ability to stop gambling for periods of time, only to again succumb to the temptation of betting. Indeed, many compulsive gamblers bet only episodically. This is similar to alcoholics who can avoid drinking for long periods and then suddenly binge. The mere fact that an

4

individual does not gamble everyday does not preclude a diagnosis of pathological gambling addiction. Mr. Donaghy's repeated unsuccessful attempts to stop gambling demonstrate that he was not merely a casual gambler. He was simply unable to control his betting.

14. Also, Mr. Donaghy's ability to accurately referee games has no connection to his compulsive gambling condition. It is very common for the employers of pathological gamblers to never notice a decrease in job performance. Indeed, most compulsive gamblers are able to maintain steady employment and healthy relationships. This is why gambling addiction is often referred to as a "hidden disease."

15. Unlike alcoholics or drug addicts, there are no outward symptoms of pathological gambling addiction. No blood test can reveal the disease. As in the case of Mr. Donaghy, many gamblers function for years with no consequence. Their families often remain oblivious to the illness until they experience the disastrous consequences of the gambler's betting.

16. The compulsive gambler is not motivated by financial greed. Rather, the money earned becomes merely a way for the pathological gambler to keep betting. For example, Mr. Donaghy did not gamble for financial reasons, but to feed his gambling addiction. Thus, Mr. Donaghy placed in jeopardy his well-paying job for the modest sums he obtained through gambling.

### E. Conclusion

17. After carefully considering all of the above information, including Mr. Donaghy's gambling activities, the DSM IV and SOGS tests, Mr. Donaghy's offense conduct, and my own professional experience, I have concluded that Mr. Donaghy is a pathological gambler and that his illness was the genesis of the illegal conduct in this case. Mr. Donaghy committed the offense while suffering from a significantly reduced mental capacity and that reduced capacity contributed substantially to the commission of the offense.

Executed on: July 26, 2008

_____
Stephen Block